# Hess *versus* Gourley.

1. In the sense of the Act of April 15th 1869 the assignor of the thing or contract is he whose right therein, or thereunder, at or before the time of his decease, passed by his own act or by law to a party in the action.

2. B. died intestate; G., one of his four heirs, brought ejectment against H., who claimed as the devisee of B.'s wife. At the trial, H. offered to prove that the property in dispute had been purchased with the money of the wife of B., and that the latter had so admitted. *Held,* that the evidence was properly rejected.

3. An ejectment was brought by one of four heirs and the judgment was entered for the whole property. No point was made nor exception taken to this action. *Held,* that the entering of judgment was not error, as there may have been ample grounds, by admission or otherwise, for the verdict.

February 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

[Hess *v.* Gourley.]

Error to the Court of Common Pleas, No. 3, of *Philadelphia county*: Of January Term 1878, No. 263.

Ejectment by John Gourley and Annie, his wife, in right of said wife, against Peter Hess and Maria Hess, his wife, and Catharine Farron.

At the trial, before Finletter, J., it appeared that in 1836, Ann Harlan, who was a widow, kept a boarding-house and had among her boarders a shoemaker, named Alexander Barber. The relations between these parties were of a friendly character, and in her business transactions Mrs. Harlan, who owned considerable real estate and was illiterate, trusted largely to the guidance of Barber. In 1848, the property in dispute was purchased by Barber for $4000, of which $500 were in cash and the balance in a mortgage. In 1849, Mrs. Harlan removed to this property, Barber still boarding with her, and in 1850 they were married. About a year after their marriage, in 1851; $500 was paid on the mortgage. Barber died intestate in 1857. Mrs. Barber died in 1870, having by will, dated March 4th 1869, devised the premises in question to Maria Hess. In 1874, Annie Gourley, as one of the four heirs of Alexander Barber, brought this suit. The defendants contended that the property was bought with the money of the widow, Harlan, and for her benefit; that it was her money was paid on account of the mortgage; that Barber never had that amount of money of his own; that his business, that of shoemaking, never yielded him a living for himself; and that he had no other source from which to derive the money.

Maria Hess, one of defendants, was offered to prove " a payment by Mrs. Barber, the aunt of the witness, through her husband, Alexander Barber, after their marriage, upon the property in dispute; that Alexander Barber was a person of extremely limited means and business (to show his pecuniary inability to make the payment referred to); and that he uniformly, during his lifetime, declared, both in the presence of his wife and out of it, that the property belonged to her; and that the witness saw the $500 payment referred to, made by Mrs. Barber to her husband for the purpose."

Also Peter Hess, the other defendant, " to prove the payment of $500 by Mrs. Harlan to Alexander Barber, prior to their marriage, upon the property in question; also Mr. Barber's declaration as to his wife's ownership of the property; also Mr. Barber's pecuniary inability to purchase the same himself, and Mrs. Barber's ability to do so."

The court rejected both of these offers on the ground of the incompetency of the witnesses.

The verdict was for plaintiffs, and after judgment defendants took this writ and assigned for error the rejection of the above offers of testimony; and in entering judgment in favor of the plaintiff below for the whole of the premises in dispute, the plaintiff's own testi-

[Hess v. Gourley.]

mony on the subject of the descent cast, showing that the plaintiff, Annie Gourley, is one of four heirs of Alexander Barber, and consequently entitled to one-fourth only, and not the whole of said premises, if she is entitled to any part thereof.

*M. Arnold* and *O. P. Cornman,* for plaintiffs in error.—The suit is between parties living at the time the cause of action accrued. They stand upon the same plane. Both were in existence when the transaction occurred which gave rise to the controversy. Neither the plaintiffs nor defendants were parties to the deed or transaction which is in review here, and neither party has any advantage arising from the death of the other.

There seems to be no reason for construing the proviso of the Act of 1869, so as to include this case and except it from the benefits conferred by that act. The competency of Peter Hess was affirmed in Craig *v.* Brendel, 19 P. F. Smith 163. Taylor *v.* Kelly, 30 P. F. Smith 95, was an action against an executor.

It was error to enter judgment for the whole of the premises. In Stephenson *v.* Richardson, 7 Norris 40, the judgment was for one-ninth of the premises in suit, when the evidence showed it should have been for one-eleventh only. This court modified the judgment, and entered final judgment for one-eleventh in accordance with the evidence.

*Henry M. Dechert,* for defendants in error.—The decision in Karns *v.* Tanner, 16 P. F. Smith 297, covers this case. In Craig *v.* Brendel, *supra,* there was no claim between the parties by devolution on the death of the owner as in this case. The competency imparted by the enacting clause of the Act of 1869, is taken away by the proviso: Taylor *v.* Kelly, *supra;* Diehl *v.* Emig, 15 Id. 320; Karns *v.* Tanner, *supra;* Pattison *v.* Armstrong et al., 24 P. F. Smith 476. If Maria Hess was incompetent as a witness her husband was.

If the judgment was erroneous it should have been modified in the court below. The possession, however, of one tenant will be considered the possession of his co-tenants: Galbraith *v.* Galbraith, 5 Watts 149.

Mr. Justice TRUNKEY delivered the opinion of the court, March 3d 1879.

The Act of April 15th 1869, Pamph. L. 30, establishes a general rule that " no interest nor policy of law shall exclude a party or person from being a witness in any civil proceeding." This abrogates the common-law rules respecting the competency of parties and interested persons, and persons on grounds of public policy; and is so comprehensive that no relation is so sacred nor interest so strong as to exempt any person, who is not taken out by the pro-

'[Hess *v.* Gourley.]

viso, from testifying in a civil proceeding which is not withdrawn from its operation. The first section declares that "this act shall not apply to actions by or against executors, administrators, or guardians, nor where the assignee of the thing or contract in action may be dead, excepting in issues and injuries *devisavit vel non*, and others respecting the right of such deceased owner between parties claiming such right by devolution on the death of such owner." It would seem difficult to misapprehend the intendment of this provision. It withdraws the specified actions from the operation of the rule. To these actions—not special persons—the act shall not apply. Therefore such actions remain within the rules of the common law, and in the trial thereof husband and wife cannot testify for each other, nor are parties and interested persons competent witnesses.

Legislation, since the Act of 1869, supplying its defects, has been in continuous recognition of the plain meaning of its words. There was no good reason for excluding from the operation of the statutory rule testimony of matters occurring after the death of the assignor of the thing or contract in action, and hence the passage of the Act of 9th April 1870, Pamph. L. 44, extending the rule to these actions as to matters occurring since the death. For obvious reasons the Act of 8th June 1874, Pamph. L. 279, excluded from the rule "actions by or against committees of lunatics, except as to matters occurring after the appointment of said committee." The Act of May 25th 1878, Pamph. L. 153, permits surviving partners to testify to matters having occurred between the surviving partners and adverse party on the record. Throughout the statutes is the spirit of equality, which forbids the application of the statutory rule in actions where one of the parties represents the rights of a decedent or a lunatic, except as to matters since the death or lunacy, and matters between a surviving partner and his adversary.

In determining the competency of a witness to prove a matter which occurred during the life of a decedent, the inquiry is whether the action is within the statute. This is not difficult when the suit is by or against an executor, administrator or guardian in his representative capacity. Nor is it in other cases, if the spirit of the statute be kept in view and the persons intended by the word assignor be learned from the context rather than its technical definition. Soon after its enactment a clear exposition of several parts of the statute was given by Agnew, J., in Karns *v.* Tanner, 16 P. F. Smith 297. He says, "Evidently it was the true purpose of the statute to close the mouth of him who is adversary to the deceased assignor." Again, "The true spirit of the proviso then seems to be that when a party to a thing or contract in action is dead, and his rights have passed, either by his own act or by that of the law, to another who represents his interest in the subject of controversy, the surviving party to that subject shall not testify to

[Hess v. Gourley.]

matters occurring in the lifetime of the adverse party whose lips are now closed." See Pattison v. Armstrong, 24 P. F. Smith 476; Gardner v. McLallen, 29 Id. 398. In the statutory sense, the assignor of the thing or contract is he whose rights therein or thereunder, at or before the time of his decease, passed by his own act, or by law, to a party in the action.

The defendant, Maria Hess, claims title under the will of Ann Barber. Alexander Barber died intestate, and the plaintiff, one of his four nephews and nieces, avers that he was owner of the land in controversy, which passed to them by operation of law. The assignor of the thing in action is dead, his right has passed to the plaintiff, and the statutory rule of evidence does not apply, except to matters which have occurred since his decease. It follows that the learned judge was right in rejecting the depositions of Maria Hess and her husband, Peter Hess: Diehl v. Emig, 15 P. F. Smith 320; Taylor v. Kelly, 30 Id. 95. In the latter, MERCUR, J., said, "We see nothing in the letter, nor in the spirit of the act, so far as it applies to husband and wife, to make one competent when the other was incompetent." An executor was a party, and the opinion and judgment are based upon the reason that the Act of 1869 does not apply to actions against executors. That the full force of the reason was considered is evident from the reference to Dellinger's Appeal, 21 P. F. Smith 425. Inasmuch as Craig v. Brendle, 19 P. F. Smith 153, was not alluded to, it is suggested that, upon its authority, Peter Hess was a competent witness for his wife, and it seems to support the position; but, if such be its bearing, it is at variance with the doctrine in Taylor v. Kelly. That doctrine rests upon the very letter and spirit of the proviso which took out all actions therein described, instead of particular persons, from the operation of the Act of 1869. By supplements the act has been somewhat extended. The statutes should be liberally construed in favor of competency, but not so as to embrace actions or persons expressly excepted. The power which, in 1878, made surviving partners competent in certain cases, can make husband and wife competent, to any extent deemed expedient, as to matters which took place before the death of the assignor of the thing or contract in suit.

The third assignment is not sustained. While it is true that the plaintiff, as one of four heirs, was entitled to one-fourth of the premises, there may have been ample grounds, by admission or otherwise, for the verdict. No point was made or exception taken in reference to this matter. The record does not show error. Stephenson v. Richardson, 7 Norris 40, cited by counsel, was a case stated, the facts were agreed upon and submitted for judgment; very different from a general verdict.

Judgment affirmed.