## Adams et al. *versus* Edwards et al.

115  211
121  641

115  211
137   30
115  211
140  386
115  211
156  474

1.  Under the Act of April 9th, 1870, P. L., 44, a party to the record will be permitted to testify to a fact existing after the death of one who is a party to the record through his legal representative, where the existing fact merely tends to prove by implication that the same or a similar state of facts existed prior to the death of the decedent, but where it appears that the testimony necessarily relates to that which existed, or took place in the decedent's lifetime, the party will not be permitted to testify.

2.  In an action of ejectment by A, claiming to be a sister of B, who died seized of the land, described in the writ, the deposition of A, the plain-

[Adams *v.* Edwards.]

tiff, was admitted in evidence to prove her relationship to B.   *Held*, that this was error.

3.   It is a mistake to bring an action in the name of an attorney in fact; but the judgment will not be reversed for that reason, as it is amendable in the court below, or in the Supreme Court

January 13th, 1887.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.   CLARK, J., absent.

ERROR to the Court of Common Pleas, No. 3, of *Philadelphia County*:   Of July Term, 1886, No, 713.

This was an action of ejectment brought by Mary Edwards, Elizabeth Davis, Alfred Hore, Mary Ann Hore by their attorney in fact, Edward F. Hoffman, and William Henry, Daniel and Edith Hore by their guardian, Bores Penrose, against Thomas Adams and Lydia Pendergast, to recover possession of a lot of land in Germantown.   The plaintiffs claimed to be heirs at law of one Jane Kemp, who died seized of said lot of land.

Upon the trial of the cause before FINLETTER, J., the plaintiffs offered in evidence the depositions of Mary Edwards and Elizabeth Davis, giving their family history, dates of birth, marriages, deaths, etc.   Objected to by defendants.   Objection overruled and depositions admitted.   (First and second assignments of error.)

Under objection and exception the letter of attorney to Edward Hoffman was admitted in evidence.   (Third assignment of error.)

The defendants offered in evidence the following paper, signed by Mary Edwards, who had admitted its execution in her deposition :

ESTATE OF JANE KEMP, DECEASED.

Orphans' Court of Philadelphia County,  }
      State of Pennsylvania, 1883.        }

It is hereby agreed 'between the undersigned that the administrator to above named estate shall forthwith apply to the Orphans' Court for the City and County of Philadelphia, for an order of sale of the real estate of decedent above named, situated on Centre Street, Germantown, for the purpose of payments of debts, mortgages and otherwise expenses of costs, the balance to be distributed as follows :—

One half to Miss Lydia Pendergast, of Washington, District of Columbia; one fourth to Mrs. Mary Edwards, of Liverpool, England; and one-fourth to the children and

[Adams *v.* Edwards.]

grand-children of Mrs. Ann Jones, deceased. The above arangement is conditioned on the sum of five hundred dollars being first paid out of the net proceeds of sales to Charles Edwards of Australia.

MARY EDWARDS.

Witness:

ANDREW M. BEVERIDGE.

Objected to by the plaintiff. Objection sustained. (Fourth assignment of error.)

The defendant offered in evidence two letters from Mary Edwards to Lydia Pendergast. Objected to by the plaintiff. Objection sustained. (Fifth assignment of error.)

The court charged the jury *inter alia* as follows:

The single question is, who are the nearest relatives of Jane Kemp? It seems undisputed that she died without children. The plaintiffs claim that they are the nearest surviving relatives. Unlike all other questions that come up in a court of justice, this almost depends upon hearsay testimony. The plaintiffs have endeavored to establish the relationship to Jane Kemp by their depositions, which have been read. So far as these depositions speak of marriage and birth they are not evidence, and you must disregard them. [So far as they speak of relationship existing at the time the witnesses speak, they are evidence in connection with other testimony before you.] (Sixth assignment of error.)

Now, in questions of this kind, very much depends upon the conduct of the parties, if they claim relationship to each other, if they have interchanged letters, if they have acted in accordance with such matters, it is presumptive evidence of relationship.

Verdict for the plaintiffs for the land described in the writ, and judgment thereon, whereupon the defendants took this writ and filed assignments of error as above shown.

*F. F. Brightly (Benjamin Harris Brewster* and *R. M. Schick* with him) for plaintiffs in error.

I. The plaintiffs claim as heirs-at-law of Jane Kemp, who, they claim, died seized. To prove relationship, the depositions of Mary Edwards and Elizabeth Davis, two of the plaintiffs, were admitted.

Under the Act of 1869, Jane Kemp, the assignor, being dead, the parties were not competent witnesses. Hess *v.* Gourley, 89 Pa. St., 198; Arthurs *v.* King, 84 Id., 530; Trustman *v.* Crenshaw, 104 Id., 192; Maxwell *v.* Smith, 41 Leg. Int., 255; McLaughlin *v.* Fulton, 104 Pa. St., 161; Ewing *v.* Ewing, 96 Pa. St., 381.

II. The above position seemed to be conceded by the plaintiffs below on the trial, but they contended that under the Act of 9th_.April, 1870, the depositions could be read as to matters occurring after the death of,. Jane Kemp, and that their alleged relationship was an existent fact, as to which they could testify.

There are rules, however, which limit the admissibility of declarations as to pedigree. These limitations were adopted to prevent fraud.

1. The declarant must be dead, and have been a member of the family.

2. The relation of the declarant must be established by other testimony. Blackburn *v.* Crawford, 3 Wall., 175.

3. The declarations must have been made *ante litam motam :* Stein *v.* Bowman, 13 Pet., 209; Hall's Deposition, 1 Wall., Jr., C. C., 85; Banert *v.* Day, 3 W. C. C., 243; People's Ins. Co., 25 Wend., 205; McCarty *v.* Deming, 4 Lans., 440.

The plaintiff's title, if any, began at the death of Jane Kemp. Any declarations made by living members of the family, or made after her death, would not be admissible.

The depositions are therefore not admissible as declarations.

III. The action cannot be maintained, brought as it is, in the name of an attorney in fact.

A promise to the "guardians of the minor children of A" is a promise to the minors, and must be sued in their name. Carskadden *v.* McGhee, 7 W. & S., 140.

A suit cannot be maintained in the name of "the heirs of A by their agent." Such a defect is fatal on error: Franklens *v.* Trimble's Heirs, 5 Pa. St., 520. See Lockhart *v.* Power, 2 W., 371; Seibert *v.* McHenry, 6 Id., 301.

IV. The agreement of Mary Edwards and her letters of April 13th and 16th, 1883, both written after Jane Kemp's death were clearly admissible as declarations of one of the plaintiffs as to her title.

It is good as a compromise between members of the same family. Such compromises imply the surrender of some right. They are favored both in equity and at law. They are sustained on grounds less than would be required between strangers: Bierer's Appeal, 92 Pa. St., 268; Frank *v.* Riegel, 2 Pears., 53; Worrall's Accounts, 5 W. & S., 111; Sturgeon *v.* Ely, 6 Pa. St., 406.

The paper does not purport to require the signatures of either Charles Edwards or the heirs of Ann Jones: Bierry *v.* App, 18 W. N. C., 6.

If for no other reason, the paper was admissible, as being

[Adams v. Edwards.]

the original of a copy which had previously been identified by the plaintiff, Mary Edwards, in her deposition: Moelling v. Coal Co., 8 W. N. C., 194.

*E. Hunn Hanson* and *E. F. Hoffman*, for defendants in error.—The depositions were admissible under the Acts of 1869 and of 1870: Rothrock v. Gallagher, 10 Norris, 108; Stephens v. Cotterell, 3 Out., 191; Foster v. Collner, 11 Id., 313.

But, while the learned judge sustained the introduction of the depositions on the ground stated, they were offered and it is thought properly offered upon the broader ground that they were evidence of a fact or facts collateral to the transfer of the land, and with respect to which there was not that privity between Jane and the plaintiffs, or between them and the defendants, which justifies the exclusion from the jury. This is exemplified by the following decisions: Craig v. Brendel, 19 P. F. S., 153; Patterson v. Armstrong, 24 Id., 476; Waltman v. Herdee, 9 Norris, 459; Warren v. Stein, Leg. Int. of 24th September, 1886; Setton v. Gehr, 15 W. N. C., 193.

The paper, which was offered and excluded, was properly excluded because: 1. It is an unsigned agreement. 2. Is entirely irrelevant to the question of possession or title, the only one in issue in the ejectment, and 3. If of any force at all, it could only come into operation after events which clearly had not happened.

Even if a family settlement, it would not be disturbed only if it was fair and equitable: Johnson v. Turner, 19 P. F. S., 449–454. There would be everything about a paper obtained as was this to induce the court promptly to disregard it as of any validity.

Mr. Justice PAXSON delivered the opinion of the court, February 28th, 1887.

The first, second and sixth assignments of error may be considered together. The first alleges error in admitting in evidence the depositions of Mary Edwards and Elizabeth Davis; the second, that the court below erred in not striking out said depositions, and the sixth that the court erred in charging the jury in reference to said depositions as follows: "So far as they speak of relationship existing at the time the witnesses speak, they are evidence in connection with other testimony before you."

The action was ejectment, and the depositions were offered to prove the relationship of the witnesses, who were the plaintiffs, to the person who died seized. Conceding that, under the Act of 1869, they were not competent witnesses to prove

any events occurring during the lifetime of Jane Kemp, the intestate, were they competent under the Act of 9th April, 1870? It was held, in Foster *v.* Colburn, 107 Penn., 305, in commenting upon Rothrock *v.* Gallaher, 91 Id., and Stebben *v.* Cotterel, 99 Id., 188, that " the expression, any fact existing after the death of the testator, must be understood with the qualification that, when the existing fact merely tends to prove by implication that the same or a similar state of facts existed prior to the death of the testator, the witness is competent; but, where it appears that the testimony necessarily relates to that which existed or took place in the testator's lifetime, the witness is incompetent." The depositions in question refer principally to marriage, birth and other matters which occurred in the lifetime of the testator. To such matters the charge of the learned judge was explicit. He said : " So far as these depositions speak of marriage and birth they are not evidence and you must disregard them. So far as they speak of relationship, existing at the time the witnesses speak, they are evidence in connection with other testimony before you." There was other evidence upon this point. John Kemp, a witness called for the defendants, said : " I am a nephew of Joseph Kemp. Knew him and his wife about twenty years. Went to their house about three or four times a month. Mrs. Kemp said she had a sister, Mary Edwards, an old bachelor brother, a son of Mrs. Edwards, in Australia, and two nieces, by the name of Lloyd, in Liverpool." And upon cross examination : " The name of her brother was David Edwards. I heard he was dead. She said she had two nieces by a sister and their names were Lloyd." This was defendant's testimony. Lydia Pendegrast, one of the defendants, deposed : " I am related to Joseph Kemp; am his niece. Jane Kemp, his wife, is dead. Her relations are the Edwards family. I cannot tell who they are and the number of them. They are the Hores." Jane Kemp was the person who died seized, and it is her real estate which is the subject of the controversy.

We have here evidence, furnished by the defendants themselves, of the relationship of the plaintiffs. There was no evidence whatever of any title in the defendants. They are in possession and rely wholly upon the weakness of the plaintiff's title.

Were the depositions of Mary Edwards and Elizabeth Davis competent to prove their relationship to Jane Kemp who died seized? They are both plaintiffs, and both swear to the relationship. As before stated, the court ruled out all they said as to births, marriages and matters occurring prior to the death of Jane Kemp, but allowed what they said as to the mere fact of their relationship to go to the jury. It is not

pretended that the witnesses would have been competent prior to the Act of 1869, nor that they were made competent by that Act. If competent at all, it must be by virtue of the Act of 9th April, 1870, P. L., 44, which allows, in the enumerated cases, a party to the record to testify to " matters occurring since the death of the person whose estate, through a legal representative, is a party to the record." An examination of the depositions shows that the witnesses testified to no matters occurring since the death of Jane Kemp. It is true, they both swore to their respective relationship to Jane Kemp. Surely, that fact did not occur since her death. It was an existing fact, and one which existed during the lifetime of Jane Kemp. Hence, when the witnesses prove a relationship existing after the death of Jane, they necessarily prove a fact existing prior to her death, and this is just what was ruled could not be done in Foster v. Collner, *supra.*

Nearly the whole of the depositions related to matters which the learned judge conceded to be incompetent, and which he instructed the jury to disregard. They were filled, as before stated, with details of the alleged relationship, such as marriages, births, deaths, etc. The record does not show whether all this was read to the jury, but it is fair to assume that it was, else the learned judge would not have instructed them to disregard it. If read to or by them, it might well have made a lodgment that the subsequent instruction would fail to efface.

The remaining assignments may be briefly disposed of. We cannot say it was error to admit the letter of attorney from Mary Edwards *et al.* to Edward F. Hoffman, who sues as their attorney in fact. It was a mistake to commence this suit in the name of the attorney in fact, but it was a technical mistake, amendable below, and here, if necessary. We presume the letter of attorney was offered to show authority to commence the suit. As, however, the letter is not given in the paper-book, we decline further comment.

We see no error in excluding the paper purporting to be an agreement of Mary Edwards. It is signed by no one but herself, and is, therefore, not an agreement in the ordinary sense of the word. As the declaration of one claiming title, it ought not to affect her. She merely consents to the distribution of the estate in a certain way, upon a condition therein expressed.

The two letters of Mary Edwards of April 13th and May 16th, 1883, are not before us. We cannot, therefore, judge of their competency.

Judgment reversed and a *venire facias de novo* awarded.