## Estate of George H. Lepper, Deceased.

Argued April 29, 1932.

Before TREXLER, P.J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Saul Schein,* for appellant.—A person whose interest is adverse to the right of the deceased party, is incompetent to affect that right by testifying 'directly' to a

fact in issue, as existing after his death, which, if it existed then, necessarily must have existed before his death. Keating v. Nolan, 51 Pa. Superior Ct. 320; Hoffer's Estate, 156 Pa. 473; Krepp's v. Carlisle, 157 Pa. 358.

*Francis A. Wolfe,* for appellee, cited: Rothrock v. Gallaher, 91 Pa. 108; Stephens v. Cotterell, 99 Pa. 188; Porter v. Nelson, 121 Pa. 628; Patterson v. Dushane, 137 Pa. 23.

OPINION BY GAWTHROP, J., July 14, 1932:

George H. Lepper, a member of the Allegheny County bar, died May 14, 1926. At the audit of the account of his executrix, who was also sole legatee, Charles H. Gamble presented a claim for $1,000, with interest from July 21, 1925, under a written contract made with the decedent at the time he assigned to the decedent $2,500 of a legacy for $5,000 bequeathed to him under the will of his uncle, Charles E. McKim, deceased. The claim was allowed and the widow has brought this appeal.

It is undisputed that McKim died April 1, 1924, and by his will left appellee a legacy of $5,000. On May 28, 1924, appellee assigned this legacy to Sullivan & Gross, Incorporated, as security for a loan of $2,000. On August 16, 1924, appellee made a second assignment of this legacy to George H. Lepper, subject to the prior assignment to Sullivan & Gross, Incorporated. At the audit of the McKim estate Lepper proved his rights under the assignment and received $2,500.

Appellee undertook to establish before the auditing judge that the assignment which he made to Lepper was not absolute, but made as security for a loan of $1,500, and that at the time he made the assignment Lepper executed a written agreement to the effect that the assignment was only security for the loan of $1,-

500, and that Lepper on collecting the $2,500 due from the McKim estate would deduct $1,500 and pay the remaining $1,000 to appellee. To prove the existence and execution of this contract appellee called a witness named Walters, who testified that he was present with appellee in decedent's office about the middle of August, 1924, and heard decedent read a paper to appellee and ask him if it was satisfactory and that both appellee and Lepper signed two papers and one of them was handed to appellee. The appellee was then called and testified, over objection, that he was a seaman and that the paper which the witness Walters said was handed to him by the decedent had been stolen from him about April 21, 1928, while he was in a port in Australia, and that he never recovered it. Walters was then recalled and testified to the contents of the paper. Having been asked to tell in his own words "how that paper read," he said: "Well, as near as I can tell you of what I remember, there was $2,500 of Mr. Gamble's in an estate, and he made this agreement with Mr. Lepper to borrow $1,500 on this date and that he would leave a thousand dollars still in the estate, which was to come to Mr. Gamble at the time Mr. Lepper got the money from the estate. Q. Can you tell us whether or not you saw the agreement signed? A. Yes, I saw it signed. Q. By whom did you see it signed? A. Saw Mr. Lepper and I saw Mr. Gamble." He testified further that he saw two papers signed and one of them was given to Gamble, together with a check for "eleven hundred and seventy odd dollars; I don't remember the odd dollars." Another witness testified that about the middle of August, 1924, Gamble showed him Lepper's check for about $1,100 and also a paper with a green back which had the name of Lepper signed on the right side and C. H. Gamble on the left, but he did not know the contents of the paper.

The principal contention made in behalf of appel-

lant is that the appellee was an incompetent witness to testify to the loss of the contract which the witness Walters said was signed by appellee and the deceased. It is obvious that the precise fact as to which the appellee testified was one which occurred after the death of Lepper, and did not exist or happen during his lifetime. The argument is made that if the appellee is competent to prove the loss of the agreement he is testifying directly to the principal fact in issue, that is, the existence or non-existence of the written agreement during Lepper's lifetime, because proof of the existence of the agreement after Lepper's death conclusively establishes the fact that it existed before his death. After the fullest consideration we are persuaded that this contention is not supported by the decisions of this court and the Supreme Court on this familiar question. The cases on this subject were reviewed by President Judge RICE in Keating v. Nolan, 51 Pa. Superior Ct. 320. He pointed out the distinction between the decisions which seem to hold that a person whose interest is adverse to the right of the deceased party is incompetent to affect that right by testifying "directly" to a fact in issue, as existing after his death, which if it existed then, necessarily must have existed before his death, and the line of cases which hold that an interested person is competent to testify to a fact, or condition of facts, existing after the death of a deceased party in interest, notwithstanding such testimony may "inferentially" tend to show that the same state of facts existed, or that some other connected fact existed or occurred, prior to the decedent's death; and that in Krepps v. Carlisle, 157 Pa. 358, it was declared that it is immaterial, on the question of competency, how obvious the inference is; and that necessarily this must be so if the rule is sound in principle. The same rule was applied by this court in Pennell v. Phillips, 53 Pa. Superior Ct. 324. It seems to be firmly settled in this

state that testimony by the surviving party as to acts occurring after the death of the adverse party is admissible, regardless of its effect as tending to prove that certain facts existed or occurred prior to the decedent's death. It follows that the court below correctly held the witness competent to prove the loss of the written agreement for the purpose of laying the ground for introducing secondary evidence of its contents, however strong the inference that it was made on the occasion described by Walters.

The remaining question is whether there was sufficient parol proof of the contents of the lost agreement. We think that there was. It is well settled that a witness who has read the lost writing, or otherwise has actual knowledge of it, and is able to testify giving his best recollection of its contents, is competent even though he cannot state the precise language of the writing: Daly's Estate, 55 Pa. Superior Ct. 488, and cases there cited. In that case this court said: ''The authorities we have cited, and many others, fully sustain the proposition that a witness testifying to the contents of a lost or destroyed writing is not rendered incompetent by inability to repeat the precise wording of the writing. Indeed no witness can be expected to repeat the full and precise language of a lost writing unless the witness had memorized the same, and this would be an unusual thing for any business man or bookkeeper to do.'' The court below pertinently observed: ''If the assignment of the legacy was absolute we can see no reason why there should have been an agreement, and the very fact that an agreement was entered into, coupled with the issuance of a check for less than half the amount assigned, would tend to show that appellee had retained some interest, and this is in conformity with the agreement as testified to by Walters.'' Our conclusion is that no error was committed in allowing the claim.

The decree is affirmed at appellant's costs.

Dissenting Opinion by Keller, J., July 14, 1932:

I dissent from the majority of the court as to the competency of the claimant to testify that the paper, which the witness, Walters, had just sworn he had seen Lepper give to claimant, had been stolen from him after Lepper's death. One party to a suit is always competent to testify as to facts occurring after the death of the other party, (Keating v. Nolan, 51 Pa. Superior Ct. 320; Pennell v. Phillips, 53 Pa. Superior Ct. 324), but here the claimant's evidence was not limited to that. He was permitted to *identify* the stolen paper with the one Lepper had given him in the presence of Walters, and thus, in effect, was permitted to testify to something that had occurred before Lepper's death. It was the same as if he had testified that Lepper, in his lifetime, had given him the paper in the presence of Walters, and that he had subsequently lost it.

In Keating v. Nolan, supra, a surviving defendant in ejectment was permitted to testify as to the date of death of the person under whom plaintiff claimed title. In Krepps v. Carlisle, 157 Pa. 358, a defendant in ejectment was permitted to testify that since the death of one of the plaintiffs and after the suit was brought, an old abutment of a bridge had been uncovered by a flood. In Pennell v. Phillips, supra, the plaintiff's wife was allowed to testify that the note when produced in court was in the same condition as it was very shortly after the death of defendant's testator. They would fit this case exactly if Walters had further testified that he had seen the same paper in claimant's possession after Lepper's death. The claimant could then have properly testified that the paper which Walters had identified as being in his possession after Lepper's death had been stolen from him, and thus accounted for its non-production. But when he was permitted to testify that the paper which

was lost was the same which Walters had seen Lepper give the claimant, he was, in effect, testifying not only to the theft of the paper but also to something which occurred before Lepper's death, viz., the giving of the paper by Lepper to him.