Hepler et ux., Appellants, *v.* Atts.

Argued April 17, 1963. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Albert E. Acker,* with him *Max P. Gabreski,* and *Wiesen, Cusick, Madden, Joyce, Acker and McKay,* for appellants.

*Robert M. Dale,* with him *Dale and Woodard,* for appellee.

OPINION BY FLOOD, J., June 12, 1963:

The defendant's decedent conveyed to the plaintiffs a tract of land of approximately 125 acres, which included 25 acres which he did not own. The price paid for the tract was $6500. The plaintiffs are suing for damages because of the defective title to the 25 acres. The jury found for the plaintiffs but the court below entered judgment n.o.v. in favor of the defendant on the ground that there was no proper proof of damages.

1. The measure of the disappointed buyer's damages in such case is that fraction of the purchase price which represents the relative value which that part to which title is defective bears to the whole tract the seller purported to convey. *Mengel v. Williamson,* 50 Pa. Superior Ct. 100 (1912); *Fuller v. Mulhollan,* 40 Pa. Superior Ct. 257 (1909); and *Krein et ux. v. Steigerwald,* 128 Pa. Superior Ct. 51, 193 A. 390 (1937). Represented mathematically, if VP represents the value of the 25 acres to which title was found by the jury to be defective and VW represents the value of the whole 125 acre tract which the decedent purported to convey, the formula for ascertaining the damages recoverable in this case is VP/VW x $6500. Here there was no evidence as to one of the elements of the formula—the denominator of the fraction. While there was evidence as to the value of the 25 acre tract, there was no evidence of the value of either the whole tract purported to be conveyed or of the remaining 100 acres from which the value of the whole tract could be calculated by simple addition.

While the plaintiffs admit that the rule as to damages set forth in these cases is correct unless special damage is shown by either party, they contend that they are entitled to show any peculiar advantage or

disadvantage to them by reason of a loss of a part of their purchase and thereby increase or decrease the damages over the formula set forth above. For this they rely upon language in the charge of the lower court in the case of *Fuller v. Mulhollan,* supra. In that case the lower court charged: "You may take into consideration the peculiar advantages or disadvantages to the defendant by reason of the loss of a part of his purchase, in addition to the proportion which it would bear to the whole according to the price agreed upon between the parties." However, in affirming, this court used language which cannot bear the interpretation the plaintiffs seek to give it. This court said at page 260: "The instruction on that point was in substance that the proportion which the coal mined by the Standard Coal Company bore to that which remained in the land would be the basis for ascertaining the damage and that this should be fixed with reference to the consideration agreed to be paid. This instruction was in harmony with numerous cases and was well applied in this instance." This did not amount to an affirmance of the proposition that in addition to the proportion of the purchase price based upon the ratio of the value of the property lost to the value of the remainder, loss of any special advantages might be added to the damages. If it be contended that the loss of part might impair the value of the remainder because the two portions could be operated more profitably as a unit than separately, and that the formula might be modified in such case, there is no evidence in the case before us that would bring any such principle into operation. If, for example, the remaining hundred acres could be cut more advantageously or profitably if the 25 acre plot were attached to it, no evidence of such fact was offered by the plaintiffs. Therefore the rule that was applied by the court below is the proper one under the evidence.

2. The plaintiffs argue that there is evidence in the record of the proportionate value of the two parts of the land purported to be conveyed. Like the court below, we find no such evidence. The testimony as to the 100 acres was only that some timber on it had been cut and what remained was undersized, quite sparse and generally inferior hardwood, with little pine or hemlock. Mr. Breniman testified that the timber on the 25 acre tract was much better, being largely pine and hemlock and much denser than that on the 100 acre tract. Mr. Davis testified that the value of the whole tract lay in the 25 acre piece, that the rest "wasn't so good". The testimony of the other witnesses added little more. None of it amounted to anything more than general statements from which neither a dollar value nor a proportionate value could be found for the 100 acre tract. Since the 100 acre tract was four times the area of the remaining portion conveyed, the testimony that the timber on the 100 acre tract was not so good or so dense as that on the 25 acre tract or that some of it had been cut, raises no inference that the tract was less valuable, or even no more valuable, than the 25 acre tract. The court below properly held that there was no evidence as to the value of the 100 acre tract or as to the whole 125 acres from which the denominator of the fraction in the damage formula could be determined. The plaintiffs did not prove their damages.

3. Nevertheless, in our opinion, the case should be retried because of the rejection of the plaintiffs' offer to prove the proportionate values of the two portions of the tract by the testimony of Mr. Hepler, one of the plaintiffs. At page 152a of the record, he was asked, under direct examination: "Q. Now as the owner of the property will you give us any approximation or proportion of the value of the timber that was down in the 25-acre as opposed to that land and timber up in

the 100-acre tract?" In view of the fact that Mr. Breni-man had earlier testified that the value of this property was entirely in the timber, and his valuation for the 25 acre tract was the value of the timber alone, the answer to this question might have been a step in proving the missing element in the damage formula. The question was objected to on the ground that the witness was not an expert. However, he was the owner of the property and therefore was competent to testify to its value. *Westinghouse Air Brake Co. v. City of Pittsburgh,* 316 Pa. 372, 176 A. 13 (1934). Later the further ground was urged that the plaintiffs were disqualified as witnesses to the value of the property under the Act of May 23, 1887, P. L. 158, 28 PS §322, because the other party to the transaction was dead and his rights had passed to the defendant in this action as his executor.

However, the Act of 1887, supra, is not applicable. Mr. Hepler had the right to testify as to the value of the property. Under the act, he is prohibited from testifying only as to occurrences prior to the death of Mr. Atts. The value of the property is in no sense covered by the prohibition of the act. The act prohibits testimony by the surviving party only as to "any matter occurring" before the death of the other party. Such language cannot exclude testimony of value of property by its owner, merely because he is a surviving party to a conveyance as to which he cannot testify.

The one case cited by the court below which might justify the exclusion, *Adams v. Edwards,* 115 Pa. 211, 8 A. 425 (1887), was not decided under the Act of 1887, supra, but under the earlier and more restrictive Act of April 9, 1870, P. L. 44. Prior to the Act of April 15, 1869, P. L. 30, Pennsylvania followed the common law rule that parties and interested persons were not competent witnesses for any purpose. *Hess v. Gourley,* 89 Pa. 195, 198 (1879). The Act of 1869

abrogated this common law rule with certain exceptions, one of which is a surviving party where the other party to the transaction has died. This act provided that "no interest nor policy of law shall exclude a party or person from being a witness in any civil proceeding: Provided . . . this act shall not apply to actions by or against executors, administrators or guardians, nor where the assignor of the thing or contract in action may be dead excepting in issues and inquiries devisavit vel non and others respecting the right of such deceased owner between parties claiming such right by devolution on the death of such owner". The result was that in cases such as this the surviving party remained an incompetent witness for all purposes and could not testify in the action. The Act of 1869 was followed shortly by the Act of April 9, 1870, P. L. 44, which provided that "in actions where the assignor of the thing or contract in action may be dead, no interest or policy of law shall exclude any party to the record from testifying to matters occurring since the death of the person, whose estate, through a legal representative, is a party to the record". As was said in *Hess v. Gourley,* supra, the exception in the Act of 1869, supra, left the status of surviving parties as it was before and did not make them competent witnesses for any purpose. The Act of 1870, literally construed, removed the incompetence only as to "matters occurring" after the death. It was under this act that *Adams v. Edwards,* supra, was decided. It does not affect the situation we are considering because under it the surviving party remains incompetent as to anything other than occurrences after the death of the other party. The Act of 1887, supra, considerably enlarges the competency of the surviving party to testify. Instead of allowing him to testify only on the one subject of post-mortem occurrences it makes him competent for all purposes except ante-mortem oc-

currences. He may now testify as to such matters as do not fall under the category of occurrences. He is no longer disqualified from testifying to the value of property during the lifetime of the decedent, even if that property was the subject of a transaction between them.

The restrictions in the cases which go beyond the literal requirement of the Act of 1887, supra, apparently stem from the persistence since that date of the influence of cases like *Adams v. Edwards,* supra, decided under the earlier Act of 1870. Restrictive interpretations, such as are found in cases like *Lockard v. Vare,* 230 Pa. 591, 79 A. 802 (1911), may no longer be regarded as proper or permissible since the opinion of the Supreme Court in *Mozino v. Canuso,* 384 Pa. 220, 120 A. 2d 300 (1956). See *Estate of George H. Lepper,* 106 Pa. Superior Ct. 123, 161 A. 569 (1932). Under the Act of 1887, as thus interpreted, the plaintiff husband was a competent witness as to the value of the property.

4. During the discussion following the objection to the question asking Mr. Hepler the value of the property, his counsel restricted his offer to the value of the property in 1957, the date of "the death of Mr. Atts". The court below held that this was irrelevant, since the crucial date was September 7, 1954, the date of the sale, and only the value as of that date was relevant.

The question as first put by counsel was relevant if 1954 values were intended. As to this, Mr. Hepler was competent to testify. The later restriction by counsel to value in 1957, apparently in an effort to come within the exception to the Dead Man's Rule, rendered the testimony irrelevant unless additional testimony was given as to whether any change in value occurred between 1954 and 1957, and, if so, the amount of such change. However, it would seem that such additional testimony might be readily available and under all the

circumstances, the case should be retried to permit the introduction of such evidence of value of the 100 acre tract, or of the relative value of the two tracts, as the plaintiffs have to offer.

The defendants argue that the plaintiffs should not be given a second chance when they failed to offer such evidence as they might have produced at the first trial merely because of counsel's error. They also point out that it may well be that in view of the amount of timber cut by the plaintiffs as evidence of their resale of the whole 125 acres to Flinspach for $3500 in 1957, and by their grantee, Flinspach since that resale, the plaintiffs have suffered little or no loss. However, the record does not indicate that any timber was out on the 25 acre tract, and, in our opinion, the interests of justice require the case to be retried.

The judgment is reversed and a new trial is ordered.