# Knepper *et al.*, Executors, *versus* Kurtz, Administratrix.

1. To maintain an action upon a covenant of general warranty, an actual eviction must be averred and proved.

2. To maintain such action a party need not actually be turned out by legal process, but he may surrender when the result is plainly inevitable.

3. In an action to recover unpaid purchase-money, a defendant may set up as an equitable defence any outstanding better title actually asserted which would amount to a failure of consideration, whatever may be the actual covenants in the deed.

4. The covenant implied in "grant, bargain and sell," is that the *grantor* has done no act nor created any encumbrance whereby the estate granted by him may be defeated.

5. Funk *v.* Voneida, 11 S. & R. 111, remarked on.

6. In a covenant against encumbrances, if encumbrances exist the covenant is broken as soon as entered into: in general warranty, the covenant is broken only by eviction. Per King, P. J.

May 12th 1868.  Before Thompson, C. J., Strong, Agnew, and Sharswood, JJ.  Read, J., absent.

Error to the Court of Common Pleas of *Franklin county :* Of May Term 1868, No. 85.

This was an action of covenant by George Knepper, *et al.*, executors, &c., of David Knepper, deceased, against Addie L. Kurtz, administratrix, &c., of James Reed, deceased.  The writ was issued April 6th 1866.  The declaration was on a covenant in a deed, and charged that the defendant's intestate had covenanted to warrant the title of plaintiffs' testator against all claims, charges, encumbrances and superior titles; averred the existence of legacies charged on the land under the will of one Stull from whom it was derived, an actual eviction under the encumbrances, payment by the intestate of $800 to recover the title; and neglect of the intestate to defend after notice.

The facts are more fully given in the opinion of Judge King on a point reserved, than they can otherwise be gathered from the paper-book ; the opinion is therefore inserted.

A verdict for the plaintiffs for $1050.37 was taken under the direction of the court, reserving the question whether upon the whole evidence the plaintiffs were entitled to recover.

Judge King's opinion is as follows :—

" The land conveyed by defendant's intestate to Daniel Knepper, had been devised by Jacob Stull to his son Solomon, by a clause in his will in these words :

" The balance of my real estate I give to my son Solomon, in the following manner : My son Solomon to pay all my debts and all my liabilities that I owe by bonds, notes and book accounts ; and further, my son Solomon shall pay the rest of my children in the following manner : He shall pay to my son Henry, five years after my death, one hundred dollars ; to my daughter Mary, six

[Knepper *v.* Kurtz.]

years after my death, one hundred dollars; to my daughter Elizabeth's children, seven years after my death, one hundred dollars, to be divided among them, share and share alike; to my son George, eight years after my death, one hundred dollars ; to my son Jacob, nine years after my death, one hundred dollars; to my daughter Dortha, ten years after my death, one hundred dollars; to my daughter Nancy, eleven years after my death, one hundred dollars; to my son Lewis, twelve years after my death, one hundred dollars.'

" These legacies to the brothers and sisters of Solomon Stull, thus became a charge on the land devised to him, and were an existing encumbrance when he conveyed to James Reed, the defendant's intestate, and still continued a lien, when Reed conveyed to David Knepper.

" The will was proved October 9th 1854. Solomon Stull conveyed to James Reed, 31st March 1856, who, on the 11th of November following, entered into a written agreement to convey the land to David Knepper, clear of all encumbrances. He afterwards, on the 13th of December 1856, executed and delivered a deed to Knepper containing a covenant of general warranty in the usual form.

" The plaintiffs finding these encumbrances upon the land conveyed to their testators, caused a notice to be served upon James Reed, setting forth the existence of the encumbrances, and requiring him to pay and discharge the same. This notice was served on the 18th of May 1861. When the notice was served, Reed declared that he and Knepper had squared up and had no business together, and that he would not pay the legacies. They were then paid by the plaintiffs, who have brought this suit to recover the amount from the administrator of Reed.

" The question of law which arises upon this statement of facts, and which has been reserved by the court, is, whether the plaintiff can recover the amount demanded in an action founded on the covenant of general warranty, contained in the deed.

" That it was in the contemplation of the parties that David Knepper should take the land clear of encumbrances, is manifest, from the terms of the agreement; but·it is contended that the agreement is merged in the deed, and that the responsibility of the defendant rests solely upon the covenants contained in the deed.

" Whether the covenant against encumbrances in the articles of agreement is merged in the deed, or whether it is still a subsisting covenant that may be enforced, it is unnecessary for the court to decide. This action is brought on the covenants in the deed, and by them the plaintiffs must either stand or fall.

It is argued that the Act of 28th May, 1715, gives to the words

8 P. F. SMITH—31

[Knepper *v.* Kurtz.]

'grant, bargain and sell,' the force of an express covenant against the encumbrances, and will protect them against the lien of the legacies created by the last will and testament of Jacob Stull. This is the first position on which plaintiffs rely to maintain their case.

"The act declares that these words 'grant, bargain and sell, shall be adjudged an express covenant to the grantee, his heirs and assigns, to wit: That the grantor was seised of an indefeasible estate in fee simple, *freed from encumbrances*, DONE OR SUFFERED FROM THE GRANTOR, *as also for quiet enjoyment against the grantor*, his heirs and assigns, unless limited by express words contained in such deed.' The language of this ancient statute, as well as all the decisions upon it, clearly limits its effect to a special warranty. It was so held by C. J. Shippen in Lessee of Balliott *v.* Bowman, and he was followed by all the judges, in the ase of Lessee of Gratz *v.* Ewalt, 2 Binn. 95, in which it was ruled that the words 'grant, bargain and sell,' created a warranty only against the grantor, *and those claiming under him, or against any act done by the grantor.*' It is true, that in Funk *v.* Voneida, in 11 S. & R. 109, Justice Duncan declared that they amounted to " an unqualified covenant against encumbrances done and suffered by the grantor, *or those under whom he claims.*' That case did not require this enlarged effect of the words of the statute, and it was not warranted by any previous decision, nor has it been followed by any decision since that time, that has come under our observation. We are of opinion, therefore, that the plaintiffs cannot maintain their action on this covenant in the deed.

"We must next inquire whether the action can be maintained on the covenant of general warranty.

"Outside of the legal profession, this covenant is regarded a panacea for every defect that can be alleged against the title of the grantor, and scriveners, especially in the rural districts, rarely think of the necessity for any other. It was, doubtless, supposed in this, that the insertion of the covenant in the deed fully met the requirements of the articles of agreement, providing that the land should be conveyed clear of encumbrances. There is, however, a very broad distinction between a covenant of general warranty, and a covenant against encumbrances. In the latter, where encumbrances exist, the covenant is broken as soon as entered into; while in the former, the covenant is broken only by an eviction.

"In order to give the covenantee a remedy against his warrantor, he must allege and prove an eviction, either actual or constructive. The eviction is actual, when the covenantee is dispossessed of the land, or when a judgment at law is rendered, which may result in actual dispossession; and it is constructive where the covenantee, by reason of the paramount title, has never been able

[Knepper v. Kurtz.]

to obtain the possession; or when, after the adverse title has been established, the covenantee has either purchased or taken a lease under such title, without any actual change of possession; or where he has purchased or taken a lease, the adverse title not having been established. These instances of constructive eviction relate more particularly to cases where there is an outstanding paramount title, and not to cases in which the party may be dispossessed by the enforcement of a lien existing against the land conveyed.

"In the case at bar there was no eviction, in the legal sense of that term, either actual or constructive, which could give to the covenantee the right to commence his action on the covenant of warranty. To allow him to do so, would be to abolish the practical distinction between the covenant of warranty and the covenant against encumbrances. If suits had been brought by the legatees under the will of Jacob Stull, and Reed, the warrantor, had been notified to defend, a judgment thereon, rendered against the plaintiffs, would, on payment thereof, have placed them in a position to maintain this action, as the law would not require them to submit to the ceremony of an actual dispossession; but having paid the legacies voluntarily and without suit, when it is possible, if an opportunity had been afforded, the covenantor might have been able to show that the encumbrances were discharged, they are within the rule established in Patton v. McFarlane, 3 Penna. R. 425.

"Notice to James Reed, the covenantor, to pay and discharge the legacies, is no evidence of an eviction as insisted upon by the plaintiffs. Had a suit been threatened, and the plaintiffs were likely to be disturbed in their possession, there would be more plausibility in the position; but even then the weight of the authorities would require us to hold there was no eviction. We are of opinion, therefore, that the law of this case is with the defendant, and direct that judgment be entered for her, notwithstanding the verdict."

Entering judgment for the defendant was assigned for error.

*J. McD. Sharpe*, for plaintiffs in error, cited Act of May 28th 1715, § 6, 1 Sm. L. 95 Purd. 322, pl. 77; Gratz v. Ewalt, 2 Binn. 95; Cain v. Henderson, Id. 108; Whitehill v. Gotwalt, 3 Penna. R. 313; Seitzinger v. Weaver, 1 Rawle 377; Funk v. Voneida, 11 S. & R. 111; Patton v. McFarlane, 3 Penna. R. 419; Skinner v. Starner, 12 Harris 123; Wilson v. Cochran, 10 Wright 230; Wolbert v. Lucas, 10 Barr 74; Poke v. Kelly, 13 S. & R. 165; Tod v. Gallagher, 16 Id. 263; Withers v. Atkinson, 1 Watts 248; Cox v. Henry, 8 Casey 21; Murphy v. Richardson, 4 Id. 288; Youngman v. Linn, 2 P. F. Smith 413; Rawle on Cov.

for Title 311; Dobbins *v.* Brown, 2 Jones 79; Stewart *v.* West, 2 Harris 336.

*F. M. Kimmel* and *G. W. Brewer*, for defendant in error.—
The Reporter received no paper-books from the defendant in error.

The opinion of the court was delivered, May 20th 1868, by

SHARSWOOD, J.—Nothing appears to be better settled in this state as well as elsewhere than that to maintain an action upon a covenant of general warranty, an actual eviction must be averred and proved. Not indeed that the party need wait to be actually turned out of possession by legal process, for he may surrender when the result is plainly inevitable. In one case it was held that a judgment in ejectment by itself was not sufficient: Paul *v.* Witman, 3 W. & S. 407. All the cases agree that there must be a change of possession: Clarke *v.* McAnulty, 3 S. & R. 364; Stewart *v.* West, 2 Harris 336; Dobbins *v.* Brown, 2 Jones 75; Wilson *v.* Cochran, 10 Wright 229. It is different where an action is brought to recover unpaid purchase-money. There the defendant in Pennsylvania has always been allowed to set up as an equitable defence any outstanding better title actually asserted, which would amount to a failure of consideration of the contract of purchase, whatever may be the actual covenants in the deed of conveyance. Such a defence was permitted originally because equity was always a part of the law of this state, and the defendant could avail himself as a defence of whatever matter would entitle him to relief at the hands of a chancellor. That was the principle on which was decided Steinhauer *v.* Witman, 1 S. & R. 438, and the long train of authorities which have followed in its wake.

It is not necessary to vindicate the law as thus settled, but there would be no difficulty in doing so. The warrantee can always give notice to his warrantor of any threatened claims, and it is his duty and interest to do so as well to save him from unnecessary cost as to render the proceeding, if successful, conclusive against him. To allow him to settle outstanding claims or encumbrances without notice or suit, and then recover the amount on his covenant, would place his covenantor at great disadvantage in point of evidence, and otherwise in defending against him instead of the original claimant.

It is urged also that the words "grant, bargain and sell" constitute an implied covenant, not only against encumbrances done and suffered by the grantor, but by all who have preceded him in the title. A dictum by Judge Duncan to this effect in Funk *v.* Voneida, 11 S. & R. 111, is relied on. No such question arose in that case, which was that of a mortgage by the grantor himself.

[Knepper v. Kurtz.]

The provision of the Act of May 28th 1715, § 6, 1 Smith's L. 95, is that those words "shall be adjudged an express covenant that the grantor was seised of an indefeasible estate in fee simple, freed from encumbrances done or suffered from the grantor." "The meaning," says Tilghman, C. J., "is not clearly expressed, but I take it to be a covenant that the grantor had done no act, nor created any encumbrance whereby the estate granted by him might be defeated; that the estate was indefeasible as to any act of the grantor:" Lessee of Gratz v. Ewalt, 2 Binn. 95; White-hill v. Gotwalt, 3 Penna. R. 313; Seitzinger v. Weaver, 1 Rawle 377. The expression of Judge Duncan in all probability was a mere *lapsus pennæ*, writing "grantor or those under whom he claims," instead of "grantor or those claiming under him." It follows that there was no error in the judgment for defendant in the court below.

Judgment affirmed.