# Clark v. Steele, Appellant.

*Deeds — Covenants — Breach of covenant — Actions — Form of action—Act of May 28, 1715, 1 Smith's Laws, 94—Damages—Measure of damages—Cross-examination.*

1. Where a deed conveying real estate conveyed also three acres of coal surrounding and underneath the farm buildings erected on the premises and contained the words "grant, bargain, sell," and a covenant of general warranty, a failure to deliver the coal constituted a breach of the covenants of the deed under Section 6 of the Act of May 28, 1715, 1 Smith's Laws, 94, providing that the words "grant, bargain, sell, shall be adjudged an express covenant to the grantee that the grantor was seised of an indefeasible estate in fee simple......as also for quiet enjoyment against the grantor, his heirs and assigns," for which assumpsit is the proper remedy.

2. In such case the measure of damages is the relative value of the coal which the grantor failed to deliver, as compared with the value of the entire tract described in the deed estimated with regard to the price fixed by the parties for the entire purchase.

3. Where, in such case, it appeared that the coal which the grantor intended to convey had been removed by the lessee of adjoining coal, without the grantor's knowledge, it was competent for the plaintiff to prove the relative value of the part to which title had failed by the testimony of persons familiar with land and mineral values, in the neighborhood, and the effect of the removal of the coal upon the value of the remainder including the buildings, and plaintiff was not limited to proving the market value of the coal removed, measured by the royalties received thereon.

4. Where in such case it appeared that the parties lived in a mining section and were familiar with the general effect of the removal of underlying coal upon buildings, springs and streams, it was to be presumed that they had these things in mind when they contracted for the sale of the land with the coal in place, and it was not error to permit recovery of damages for injuries to the buildings, springs and streams, where the general averment of the resulting damage was sufficient to warrant recovery of such damages as would naturally follow upon the breach of the covenant, particularly where the evidence as to such injuries was received without objection made on the specific ground that it was not within the scope of the statement of claim.

5. In such case it was not error to permit plaintiff to question

a witness as to the present condition of the buildings, wells and springs, where defendant had already cross-examined the witness concerning such matters.

*Practice—Trials—Statement of claim—Defective statement.*

6. Where a statement of claim is defective, but the case is tried on its merits and evidence is received without objection being made on the specific ground that it is not within the scope of the statement of claim, the appellate court will treat the statement as amended and consider the case in accordance with the evidence produced and the theory on which it was tried.

Argued Sept. 25, 1916. Appeal, No. 98, Oct. T., 1916, by defendant, from judgment of C. P. Armstrong Co., Dec. T., 1914, No. 72, on verdict for plaintiff, in case of James D. Clark v. W. J. Steele. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit for breach of a warranty of title in a deed. Before KING, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $2,000 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury, answers to points and rulings on evidence.

*R. L. Ralston,* with him *F. C. Jones,* for appellant.— The grantor conveying coal lands by deed without excepting the coal does not render himself liable under the covenants of title in a deed: Babcock v. Day, 104 Pa. 4.

Plaintiff's remedy was to dissolve the contract by reconveying the land and receiving back the purchase-money: Harlen, et al., v. Lehigh Coal & Nav. Co., 35 Pa. 287; Landreth v. Howell, 24 Pa. Superior Ct. 210; Mays, et al., v. Dwight, et al., 82 Pa. 462.

The admission of evidence concerning injuries to the buildings and springs was error: Del. & Hudson Canal Co. v. Barnes, et al., 31 Pa. 193; Harmony v. Penna., Monongahela & Southern R. R. Co., 222 Pa. 631.

*Harry C. Golden,* with him *C. E. Harrington* and *Ward McCullough,* for appellee.—The plaintiff was entitled to recover, not only because of the breach of the covenant of title, but also because of the partial failure of the consideration: Fuller v. Mulhollan, 40 Pa. Superior Ct. 257; Mengel v. Williamson, 50 Pa. Superior Ct. 100; Beaupland v. McKeen, et al., 28 Pa. 124; Stafford, et al., v. Giles, 135 Pa. 411; Powell, et al., Exrs., v. Forcey, 241 Pa. 152; Eby, et al., v. Elder, et al., 122 Pa. 342; Fisher v. Worrall, 5 W. & S. 478.

The instructions to the jury relating to the measure of damages were proper: Morris v. Phelps, 5 Johns. (N. Y.) 49; Lee v. Dean, 3 Whart. 316; Beaupland v. McKeen, et al., 28 Pa. 124.

The evidence concerning the injuries to the buildings and the springs was properly admitted.

OPINION BY MR. JUSTICE FRAZER, January 8, 1917:

This is an action in assumpsit by a vendee against his vendor to recover damages by reason of failure of the latter to deliver coal underlying the surface of the land sold, the coal having been mined out before the conveyance and without the knowledge of either party.

Defendant in 1896 leased to a third person on a specified royalty all the coal underlying a five hundred acre tract of land belonging to him, reserving "the right to retain three acres in one body underneath the buildings now erected on the land if desired. Said three acres to be located and designated by the first party hereto." In 1907, eleven years after the execution of the lease above referred to, defendant sold to James D. Clark, plaintiff in this case, a part of the above tract containing one hundred and four acres and one hundred and twenty rods, which included the buildings and the three-acre tract mentioned in the deed "excepting and reserving" from the grant "all the coal in and underlying the above described tract of land (saving three acres of said coal surrounding and underneath the farm buildings now

erected on said premises, which three acres of coal are not excepted herefrom but are included in this grant) together with the mining rights and privileges contained" in the former lease of the coal. There is evidence that, before purchasing, plaintiff inquired of defendant whether the three acres of coal had been mined out and was assured they were not. It is undisputed that previous to this sale the coal under the three acres had in fact been mined out by the lessee of the whole tract, or his successor in title; there is evidence, however, that neither plaintiff nor defendant had knowledge of this fact. Upon learning the coal had been removed, plaintiff brought suit for damages against the Armstrong Coal Company, the assignee of the lease. The trial of this case resulted in a verdict for the plaintiff for nominal damages which the lower court subsequently set aside and entered judgment for the defendant non obstante veredicto, on the ground that under the terms of the lease the lessor merely reserved the right to retain the three acres of coal, if at some time in the future he desired to do so, and was bound to give notice of such desire within a reasonable time, and, as it did not appear such notice had been given, the lessee was justified in removing the whole of the coal. Clark then brought this action against defendant alleging failure of title and of consideration.

The first and third to ninth assignments of error inclusive relate to the right of plaintiff to sue in assumpsit for the alleged breach of covenant for failure of consideration. These assignments are without merit. The deed in the present case contains the words "grant, bargain and sell" and also a covenant of general warranty. Section 6 of the Act of May 28, 1715, 1 Smith's Laws, 94 provides that "All deeds to be recorded in pursuance of this act, whereby any estate of inheritance in fee simple shall hereafter be limited to the grantee and his heirs, the words grant, bargain, sell, shall be adjudged an express covenant to the grantee, his heirs and assigns, to

wit, that the grantor was seised of an indefeasible estate, in fee simple freed from encumbrances done or suffered from the grantor (excepting the rents and services due to the lord of the fee), as also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by express words contained in such deed; and the grantee, his heirs, executors, administrators and assigns, may, in any action, assign breaches, as if such covenants were expressly inserted." In Knepper, et al., Exrs., v. Kurtz, 58 Pa. 480, 485, it was said, quoting words of Chief Justice TILGHMAN, referring to this section of the Act of 1715, in Lessee of Gratz v. Ewalt, 2 Binney 94, 98, "The meaning is not clearly expressed; but I take it to be a covenant that the grantor had done no act, nor created any encumbrance whereby the estate granted by him might be defeated; that the estate was indefeasible as to any act of the grantor." In Hosack v. Crill, 18 Pa. Superior Ct. 90, 98, it was said: "Whilst the technical words 'grant, bargain and sell' are not necessary to the creation of a separate estate in the coal, yet where they are used and words of inheritance are added, as was the case here, it is to be presumed, unless a contrary intent clearly and affirmatively appears, that the parties intended them to have their ordinary legal effect, which is to vest in the grantee the entire ownership of the coal in the land described." Under the above act and authorities there can be no doubt that the failure to deliver the coal constituted a breach of the covenants in the deed.

The principles governing the remedy of the grantee where the grantor has failed to deliver possession or a good title in accordance with the expressed or implied covenants in the deed were fully stated by this court in Beaupland v. McKeen, 28 Pa. 124, 130, as follows: "We have gone further in Pennsylvania in relieving purchasers of real estate from payment of purchase-money, on the ground of defects and encumbrances, than courts of justice have gone in any other state or country where the common law obtains. We administer not only all

equitable relief whilst the contract remains executory, but, after it has been executed by a deed made and delivered, we give the purchaser, besides the full benefit of any covenant his deed may contain, the right to defend himself from payment of the purchase-money however solemn the instrument by which it is secured, if he can show a clear outstanding defect or an encumbrance, unless he expressly assumes the risk of it." Under the old practice the proper form of action in cases like the present was covenant but since the distinction between the actions of covenant and assumpsit has been abolished (Act of May 25, 1887, P. L. 271) assumpsit is the proper remedy.

The second assignment alleges error in the charge of the court with respect to the measure of damages. The court charged: "The measure of damages is the relative value of the coal mined out of these three acres before the plaintiff purchased, as compared with the value of the entire tract as described in the deed, estimated with regard to the price fixed by the parties for the entire purchase, and, in considering and estimating the damages, you take into consideration the peculiar advantages or disadvantages of the part lost with reference to the whole of the land. You may consider the effect which the part lost would have upon the value of the entire purchase, keeping in mind that the consideration mentioned in the deed and paid by the grantee to the grantor limits the amount of the recovery." This instruction is in accordance with the general rules on the subject heretofore adopted by this court. In the case of Beaupland v. McKeen, supra, the measure of damages was stated to be the relative value which the part taken away bears to the whole and the rule was further explained in the following language: "The relative value of the part to the whole is to be estimated with regard to the price fixed by the parties for the whole. The whole purchase being assumed to be worth the price agreed on, what part of the price would fairly be represented by the

part taken away?.......It was competent for either party under this rule, with its limitations, to give evidence of the peculiar advantages or disadvantages of the part lost, and the inquiry should not be unduly restrained whilst it is confined to the proper point." Another early case in which the question was discussed is Lee v. Dean, 3 Wharton 316, 331, where it was said: "It has also been contended, supposing that the plaintiff is entitled to recover for the nonconveyance of the one acre one hundred and four perches, that he ought only to recover back such proportion of the whole purchase-money paid by him, as the one acre one hundred and four perches bears to the whole quantity of land paid for. This, however, even in a case untainted with fraud, has neither reason nor authority to support it, as is very clearly shown by Chief Justice Kent, in Morris v. Phelps, 5 Johns. (N. Y.) 49, 56. There it was held, in an action for a breach of covenant of seisen, where there was a want of title only as to part of the land conveyed, that the damages ought to be apportioned to the measure of value between the land lost and the land preserved, and not according to the number of acres lost and the number preserved. He also puts a case, which illustrates the justice of the rule very forcibly. 'Suppose,' says he, 'a valuable stream of water, with expensive improvements upon it, with ten acres of adjoining barren land, was sold for $10,000; and it should afterwards appear that the title to the stream with the improvements on it failed, but remained good as to the residue of the land, would it not be unjust that the grantee should be limited in damages, under his covenants, to an apportionment according to the number of acres lost, when the sole inducement was defeated, and the whole value of the purchase had failed? So, on the other hand, if only the title to the nine barren acres failed, the vendor would feel the weight of extreme injustice if he was obliged to refund nine-tenths of the consideration money.' "

The same rule was applied by the Superior Court in

Fuller v. Mulhollan, 40 Pa. Superior Ct. 257, in an action of assumpsit on a note given in partial payment for coal land, where the defense was that a portion of the coal had been previously mined by a third person. The Superior Court, after approving the instructions of the lower court in which the measure of damages were stated in substantial accordance with the rules given in the above cases, said: "The relative value which the part taken away bears to the whole determines the extent of the plaintiff's injury and this is to be estimated with regard to the price fixed by the parties for the whole. It is, of course, competent to prove that the part to which the title has failed was of greater or less value than the part actually conveyed, and the correct measure of damages is the value of the part taken in proportion to the value of the part which the vendee gets, the computation being on the basis of the purchase-money. Under this rule either party may show peculiar advantages or disadvantages of the part for which the title failed, but this does not permit evidence of the value of the bargain. In the absence of fraud the consideration fixed by the parties limits the amount of recovery whether the contract be executed or executory."

The burden of proving the relative value of the part to which title fails as compared with the value of the whole property was of course on the plaintiff. He met this burden by offering the testimony of persons familiar with land and mineral values in the neighborhood, and of the effect of the removal of the coal upon the value of the remainder including the buildings. Appellant contends this evidence was improperly admitted and that the limit of plaintiff's right to recover was the value of the coal recovered as measured by the royalties received thereon. This argument is inconsistent with the rule which permits plaintiff to show the peculiar advantages of the part lost in its relation to the remainder. If, for example, it could be demonstrated that the probable effect of the removal of the coal would be a subsidence of

the surface and consequent injury to buildings, springs, etc., surely the purchaser should not be limited in his damages to the market value of the coal.

It must be conceded it was the duty of plaintiff not only to prove the damages which he suffered, but properly to allege them in his statement of claim. The statement in the present case is very brief and merely sets out the fact of the conveyance of the property from defendant to plaintiff, quotes the portion of the deed containing the reservation and follows this by an allegation that, when plaintiff purchased the land, the coal under the three-acre tract had been removed from the premises, although at the time he had been assured by the defendant, and also by the lessee of the coal under the remainder of the tract, that it had not been mined and that the purchase was made in reliance thereon. He further alleges that by reason of the partial failure of the consideration and breach of warranty, plaintiff sustained a loss of $5,000. While there is no specific claim for damages for injury to the buildings or to the water supply on the premises, it does appear there were farm buildings on the land. The general averment of the resulting damage is sufficient to warrant recovery of such damages as would naturally follow from the breach of covenant and which must therefore be held to have been within the contemplation of the parties at the time the contract was made, or such as, in the ordinary course of things, they might have expected to follow its violation: Adams Express Co. v. Egbert, 36 Pa. 360; Billmeyer, Dill & Co. v. Wagner, 91 Pa. 92; Kinports v. Breon, 193 Pa. 309; Clyde Coal Co. v. Pittsburgh & Lake Erie R. R. Co., 226 Pa. 391.

The parties lived in a mining section and were both familiar with the general effect on the surface of the removal of underlying coal including the danger of a subsidence of the surface and consequent injury to buildings, springs and streams. It will be presumed, therefore, that they had these things in mind when they con-

tracted for the sale of the land with the coal in place under the farm buildings on the premises. Furthermore, assuming the statement to be defective, the case was tried on its merits, the evidence as to the damage to the buildings and springs received without objection being made on the specific ground that it was not within the scope of the statement of claim, and in such case our practice is to treat the statement as amended and consider the case in accordance with the evidence produced and the theory on which it was tried: Quick v. Miller, 103 Pa. 67; Carpenter v. Lancaster, 212 Pa. 581.

The tenth and eleventh assignments of error complain of the action of the court in permitting plaintiff to ask a witness as to the present condition of the buildings, wells and springs. We see in this no cause for reversal, in view of the fact that defendant had already cross-examined the witness concerning these matters. The evidence complained of in the twelfth assignment was properly admitted under the rule laid down as to the measure of damages. The thirteenth assignment is also without merit. Whether or not plaintiff was willing to accept what he paid for the farm had no bearing on the question of the value of the land. While on the whole the damages found by the jury seem high, their verdict finds ample support in the evidence.

The assignments of error are all overruled and the judgment affirmed.