## Krein et ux. *v.* Steigerwald, Appellant.

Argued May 6, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Edward Goldberg*, with him *Benjamin L. Steinberg* and *I. E. Binstock*, for appellant.

*John E. Winner*, with him *Floyd V. Winner*, for appellees.

OPINION BY PARKER, J., July 15, 1937:

This is an action in assumpsit brought by the plaintiffs, grantees in a deed, to recover from the defendant, the grantor, damages for breach of a general warranty. The plaintiffs have a judgment after verdict and the defendant has appealed, assigning as errors the refusals of his motions for judgment n. o. v. and for a new trial.

Michael Steigerwald, being the owner of one hundred acres of land situated in Marshall Township, Allegheny County, granted to Forest Oil Company on January 6, 1899, a lease for the production of oil and gas for a term of twenty years. Subsequently the lease was assigned to South Penn Oil Company. During the term six wells were drilled on the premises. Just prior to the expiration of the lease, the defendant extended the term of the original lease so that it is and will be for some time an encumbrance on the whole tract. The original lease and the assignment were duly recorded but the extension was not placed of record.

On March 27, 1925, the defendant granted, bargained, and sold to plaintiffs 15.86 acres, part of the 100 acres, by deed with covenant of general warranty. At that date and until the time of the trial the South Penn Oil Company was in open and visible possession of the premises producing oil and gas.

The defendant, in support of his motion for judgment n. o. v., contends that "the plaintiffs having knowledge of the oil and gas derricks on the land [when the deed was delivered] took the property subject to the oil and gas leases." There is no merit in this contention. The trial judge submitted to the jury a question for special finding: "Did plaintiffs accept the deed from defendant with knowledge that there was an outstanding oil lease, that the conveyance was made subject thereto, and pay the purchase price on that understanding?"

The jury replied: "No". The special finding was consistent with the general verdict.

The title of the South Penn Oil Company was superior to that of plaintiffs, notwithstanding the fact that the extension was not recorded, for it was in actual and visible possession of the premises when the plaintiffs took title. The evidence shows that at that time the oil company had on the premises derricks, pumping jacks, tubing, rods, oil lines, tanks, and other paraphernalia used in the production of oil and gas, and that the wells were being operated. One of the derricks was within 300 feet of the 15.86 acres and in plain view from the house thereon. "The possession of land is notice to the world of every title under which the occupant claims it, unless he has put a title on record inconsistent with his possession. When, as in this case, an individual is in possession under no recorded title, his possession is notice of every title he can set up to protect himself, sufficient at least to put a purchaser on inquiry": *Rowe v. Ream,* 105 Pa. 543, 546. Also, see *M'Culloch v. Cowher,* 5 W. & S. 427, 429; *Hottenstein v. Lerch,* 104 Pa. 454. *Aye v. Phila. Co.,* 193 Pa. 451, 44 A. 555, is not inconsistent in any respect with the other cases for there was not in that case any possession by the owner of the unrecorded lease of the land being purchased. In fact, the only possession claimed was that of another and distinct property on which a test well had been drilled.

The defendant having in writing covenanted for and warranted title and it having been shown that the grantee has been deprived of title to a portion of the premises, it would seem that the breach had been established. If it is sought to reform the writing the evidence in support of mistake must be clear, precise and indubitable: *Penna. R. R. Co. v. Shay,* 82 Pa. 198, 203. The proofs offered to avoid the effect of the writing not only failed to show by a clear preponderance

of the evidence a mistake, but are decidedly the other way. We must, on a motion for judgment n. o. v., view the evidence in a light most favorable to the one who has had a verdict and draw all reasonable inferences of fact in his favor. It was shown that plaintiffs had the record searched and discovered the lease to Forest Oil Company, which lease by its terms had expired. Before closing the transaction specific inquiry was made of the grantor, the defendant, as to whether there was any outstanding lease on the premises about to be sold and defendant replied that there were no more oil leases on it. Appellant testified: "I give them all rights on that 15 acres on top of the ground and below the ground, everything belonged to him. I told him that that was his." Certainly the deed could not be reformed in the face of such testimony. In any event, the jury found the facts relied upon against the defendant.

The remaining complaint in support of the motion for a new trial is that the trial court erred in receiving testimony of a real estate expert as to damages when that expert was not properly qualified to express an opinion. The burden of proving the relative value of the part to which the title fails as compared with the value of the whole property was, of course, on the plaintiff: *Clark v. Steele,* 255 Pa. 330, 337, 99 A. 1001. In *Fuller v. Mulhollan,* 40 Pa. Superior Ct. 257, this court, speaking through the late Judge HENDERSON, after referring to a number of decisions of the Supreme Court stated the applicable rule tersely as follows (p. 261): "The relative value which the part taken away bears to the whole determines the extent of the plaintiff's injury and this is to be estimated with regard to the price fixed by the parties for the whole. It is, of course, competent to prove that the part to which the title has failed was of greater or less value than the part actually conveyed, and the correct measure

of damages is the value of the part taken in proportion to the value of the part which the vendee gets, the computation being on the basis of the purchase money. Under this rule either party may show peculiar advantages or disadvantages of the part for which the title failed, but this does not permit evidence of the value of the bargain. In the absence of fraud the consideration fixed by the parties limits the amount of recovery whether the contract be executed or executory."

With these fundamental principles in mind we will state the qualifications of the witness Simon as disclosed by the testimony. He had engaged in the selling of real estate in Allegheny County for seventeen years and possessed experience in the oil and gas business, having engaged in the taking of leases for oil and gas. He had sold fifteen or twenty farms in that locality—in the same township, in the adjoining township, and in the same general oil field in an adjoining part of Butler County. He had had special experience in the selling of land such as this and knew the prevailing prices where the existence of oil and gas rights was involved in the transaction and stated that he knew the effect of such situations. He disclosed an experience which enabled him to know the effect on market price of the absence of oil and gas rights and showed that he was familiar with the land in question. He was able to state to the jury the advantages and disadvantages of the possession of, and of the failure to have ownership and control of, the underlying oil and gas.

We have not any doubt of the qualification of the witness to express an opinion bearing on the damages suffered by reason of the breach of warranty. The question of the qualification of the witness was primarily for the trial judge and we would not reverse except for a clear abuse of discretion.

It must be borne in mind that the problem immedi-

ately involved was not to fix the market value of an oil and gas property unencumbered by other facts. Undoubtedly in such a case one who had been engaged in the buying and selling of oil and gas property and who was an expert on the technical and practical details of that industry would have been better qualified to fix the market value of an oil and gas farm. That question was only incidental to the one here involved and a much more complicated question was presented. At the same time an expert in oil and gas properties might have been poorly qualified to express an opinion as to the effect of an outstanding oil and gas lease on the value of a property valuable principally as a rural residence or for gardening, farming, or the like. Keeping in mind the measure of damages stated above, it was relevant and pertinent to know the practical effect of the encumbrance on this property. This was in an old oil field where the flush production had been taken out. From the testimony of the defendant the royalty was small, from which it follows that the total production was small. Yet the South Penn Oil Company could come upon this land at any time and drill. The royalty might, under such circumstances, be an inadequate return for the inconvenience of having wells drilled on the property with the consequent taking of the necessary ground for wells, lines, and pumping outfits, and the leaking of salt water and oil.

The reasonableness of the judgment is strong evidence of the exercise of a sound discretion by the trial judge. The appellant should have no cause for complaint. We hazard the suggestion that if a new trial were granted and further experts were called, the judgment might well be larger instead of less. The expert was fully qualified to express an opinion as to the elements he took into account in fixing the damages. If he had been more expert he might have shown addi-

tional damages, but the plaintiffs have only been permitted to recover the damages which were shown.

Judgment affirmed.