## The Youghiogheny Iron and Coal Co. *versus* Smith.

1. If an agent make a contract in his own name without disclosing his principal, the principal even if unknown to the contractor is bound and liable for damages on a breach.

2. By contracting in his own name, the agent only adds his personal obligation, to that of his principal.

3. Iron was delivered under a contract, the vendor was notified that it was inferior and requested to take it away, he neglected to do so. The vendee could dispose of it or use it, and the vendor was entitled only to its actual market value.

4. The measure of damages to the vendee to whom an inferior article was delivered and retained by him, was the difference between the value of the article and what a good article could be obtained for.

October 31st 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county :* No. 54, to October and November Term 1869.

This was an action of assumpsit to April Term 1868, by Wil-

[Youghiogheny Iron Co. *v.* Smith.]

liam Smith against The Youghiogheny Iron and Coal Company, for failure to deliver iron under the contract hereafter mentioned. The plaintiff's evidence was, that in June 1867 the defendants made two contracts to deliver to him good, gray, soft Youghiogheny iron: one contract was for 100 tons, the other for 400 tons, the president of the company, Mr. Wickersham, promising to haul it at once. The plaintiff gave his notes for the iron at four, five and six months. A third contract was made in August with Mr. Wickersham for 500 tons more of the same kind of iron as the former, to be delivered as fast as the plaintiff should require it; three notes were given for this iron at four, five and six months. The iron was not delivered in season, and in consequence the notes had to be renewed, Mr. Wickersham promising to pay the discount, amounting to $500.14; the iron delivered on the last contract was of very inferior quality; the plaintiff had to go into the market to obtain other iron to supply its place, and sustained "a severe loss." The iron was shown to Wickersham; he said the iron was not good; "the company would make it all right, Mr. Smith should not lose by it;" he told the plaintiff to lay the inferior iron by; he took a few loads back. The notes were at Wickersham's request made to him instead of the company; they had been paid by the plaintiff.

The defendant gave evidence that the company's iron was sent to Wickersham to sell on commission which was paid him in addition to his salary; orders were never received at the furnace; its product was sent to him and he sold it; he was financial agent of the company; he collected the money for iron sold, and applied it to the liabilities of the company.

The defendant's points and their answers were:—

1. "The plaintiff, having brought an action of assumpsit, and having neither alleged nor proved a warranty, cannot recover in this action without returning, or offering to return the iron; and if the jury believe from the evidence that the plaintiff, notwithstanding his dissatisfaction with the quality of the iron, finally concluded to retain and use the same, he is precluded in law from subsequently recovering damages for an alleged defect in quality."

2. "The evidence of R. H. Smith, one of the plaintiff's witnesses, that Wickersham, the president of the company, told the plaintiff to put the defective iron aside, and that the company would act so that the plaintiff would suffer no damage, will not enable the plaintiff to maintain this action, unless the jury are satisfied from the evidence that the plaintiff closed with the proposition, and actually put the objectionable iron aside for the defendants; but if the jury believe that the plaintiff did not accept or rely upon the said proposition, but, from fear of the company's solvency, or for any reason that seemed good to him, elected to

[Youghiogheny Iron Co. *v.* Smith.]

retain and use the iron, he cannot now complain and recover damages, but the verdict should be for the defendant."

Answer *to* 1st and 2d points : " If you believe from the evidence that Wickersham agreed, in consideration that the plaintiff would give him his negotiable notes in advance, to deliver to him 500 tons of ' good, gray, soft Youghiogheny iron,' as fast as it could be manufactured at the furnace, and if the plaintiff then gave his notes, which were discounted immediately, and the proceeds received by the defendant ; and if, when the iron came to be manufactured and delivered, it was found not to be ' good, gray, soft Youghiogheny iron,' but a white iron, made of cinders, and of a very inferior quality —so much so that it could not be used by the plaintiff in carrying on the kind of business for which it was purchased ; and if he frequently notified defendant of these facts, and requested him to take the iron away ; and if the defendant did not do so, but requested the plaintiff to let it remain on his premises, and promised that he would make it all right with him, so that he should lose nothing by it ; and if the iron was left there under these promises, and the defendant neglected either to take it away, or to supply its place with such iron as he had contracted to deliver, for an unreasonable time ; and if the plaintiff was compelled to go into the market and buy iron in its place, to enable him to carry on his works—then, when the plaintiff, as in this case, has paid in advance, he may, in order to secure himself as far as he can, use the metal for such purpose as he may think proper, and bring suit against the defendant for the difference between what this white iron was worth in the market, and what he was obliged to pay for iron to supply its place."

4. " If the jury believe, from all the evidence in the case, that the contract was made with Wickersham as an individual, and that the plaintiff, at the time of the contract, looked only to Mr. Wickersham as the party with whom plaintiff dealt, plaintiff cannot maintain an action 'against defendant, but his remedy is against Wickersham alone."

Answer : " We may as well first dispose of the question raised by defendant's 4th point, as to whether this action can be maintained against the defendant. There is no conflicting testimony on this question. Taking all the testimony to be true, the jury will be warranted in coming to the conclusion that Mr. Wickersham had power to make this contract for the company — and that it was binding on it—and therefore as far as this question is concerned, the plaintiff is entitled to the verdict."

The court (Hampton, P. J.) further instructed the jury :—

" You may find for the plaintiff the difference between the true market value of the 300 tons of white iron and the true market value of the same amount of ' good, gray, soft iron,' if the plain-

[Youghiogheny Iron Co. v. Smith.]

tiff was obliged to pay that much to supply the place of the other, with interest."

The verdict was for the plaintiff for $3209.

The defendants took a writ of error and assigned for error the answers to their points and the part of the charge given above.

*G. Shiras, Jr.*, for plaintiffs in error.—A vendee of personal property, not having alleged a warranty or wilful deceit, and having accepted and converted to his own use the thing sold, is precluded from claiming damages for alleged inferiority of quality : Chandelor v. Lopus, 1 Smith's L. C. 238 ; Fisher v. Launda, 1 Campbell 190 ; Grimaldi v. White, 4 Esp. 95 ; Milner v. Tucker, 1 C. & P. 15 ; Reed v. Randall, 29 N. Y. 358 ; Heilbruner v. Wayte, 1 P. F. Smith 261 ; Eagan v. Call, 10 Casey 236 ; Carson v. Baillie, 7 Harris 375 ; Wetherill v. Neilson, 8 Id. 448 ; Weimer v. Clement, 1 Wright 148 ; "Law of Sales," July 1868, of the Law Review 636 ; 1 Smith's L. C. 289, note ; Kirk v. Nice, 2 Watts 367.

*A. M. Brown*, for defendant in error.—The article was not that contracted for : Borrekins v. Bevan, 3 Rawle 42, and, if taken under objection, a reduction in price might be required : Buffington v. Quantin, 5 Harris 310 ; Dailey v. Green, 3 Harris 118 ; Parkinson v. Lee, 2 East 144 ; Frankenfield v. Freyman, 1 Harris 56 ; Fraley v. Bispham, 10 Barr 320 ; Lord v. Grow, 3 Wright 88 ; Everett v. Gray, 1 Mass. R. 101 ; Freeman v. Clute, 3 Barb. 424. The measure of damages in this case was the actual injury sustained in consequence of the defendant's default—compensation for the actual loss : Sedgwick on Damages 210 ; Peters v. Whitney, 23 Barb. N. Y. 24 ; Davis v. Talcott, 14 Barb. 611 ; Singer v. Farnsworth, 2 Ind. 597 ; Sedgwick on Damages, 202 and note 1, 203 ; Masterton v. Mayor of Brooklyn, 7 Hill 62 ; Bank of Montgomery v. Reese, 2 Casey 143 ; Adams' Express Co. v. Egbert, 12 Casey 360 ; Morris v. Parham 4 Phila. R. 62 ; Smethurst v. Woolston, 5 W. & S., 106 ; Forsyth v. Palmer, 2 Harris 97.

The opinion of the court was delivered, January 3d 1871, by

SHARSWOOD, J.—It will not be necessary to discuss the several errors assigned separately, as the principles involved in them may be stated and disposed of more briefly in a different order.

It may certainly be now regarded as a point settled, beyond all possible controversy, that if an agent, duly authorized, makes a contract in his own name, without disclosing his principal, and even when such principal is entirely unknown to the other contracting party, he is nevertheless bound, and damages may be recovered of him in an action for its breach. By contracting in

[Youghiogheny Iron Co. *v.* Smith.]

his own name, the agent only adds his personal obligation to that of the person who employs him : 2 Kent's Com. 631 and note. The learned judge below was, therefore, perfectly right in treating the question presented to him, of the liability of the defendants on the contract of Wickersham, as one merely of power, and in submitting to the jury as the only question whether he was duly authorized to make the contract in question for the sale of their iron. That the notes for the price were drawn to Wickersham's order, and that a bill for the damages was afterwards rendered by the plaintiff to him, and in his name alone, were facts altogether immaterial; nor would it help the plaintiffs in error on another trial, if they should prove by Wickersham that the company had nothing to do with the contract or with the promissory notes, if the fact remains, as established by this verdict, that Wickersham was their agent, with full power to make the contract for the breach of which the action was brought.

As to the question whether when a manufacturer undertakes to make and deliver an article of a designated quality, and in fact delivers one of an inferior kind, the vendee is bound to return it, and cannot keep it and resort to an action for damages, which has been so elaborately argued on both sides, it does not arise on this record, and we are not called upon to decide it. The learned judge below, in the manner in which he submitted the case to the jury, substantially ruled that point in favor of the plaintiffs in error, and they have, therefore, no reason to find fault with the charge. He put the case to them exclusively upon the fact of a special agreement between the parties, and it is not alleged or pretended that there was not evidence in the cause to justify such submission. If the jury believed that the vendee notified the agent of the vendors of the bad quality of the iron, delivered and requested him to take it away—if the agent did not do so, but requested the vendee to let it remain on his premises, and promised that he would make it all right with him, so that he should lose nothing by it—surely these facts dispensed with any return of the iron, and made the vendors responsible for the damage sustained by their breach of contract in delivering an article of an inferior quality to that which they had contracted to deliver. After such a tender and refusal, it was not the duty of the vendee to keep the iron on hand, especially as it was a cumbrous article, to wait the good pleasure of the vendors, but he could dispose of or use it, and all that the vendors could in reason ask would be a credit for its actual market value.

The rule laid down by the learned judge for the measure of damages was undoubtedly right and perfectly accurate. If the jury found from the evidence the facts submitted to them, the plaintiff was entitled to recover the difference between what the

inferior article was worth in the market and what he was obliged to pay for good iron to supply its place. And as the iron contracted for was to have been delivered before the maturity of the notes given for it, it certainly cannot be questioned that if these notes were renewed at the request of Wickersham, with whom, according to the theory of the plaintiffs in error, the vendee was dealing as the agent of an undisclosed and unknown principal, and he specially promised to pay the discount upon their renewal, the plaintiff would have an undoubted right also to recover the money so paid with interest.

Thus the defendant's points were all substantially answered in the charge, and in a manner of which he has no just cause to complain.

Judgment affirmed.