Moser Manufacturing Company *v.* Donegal & Conoy Mutual Fire Insurance Company et al., Appellants.

Argued March 24, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Douglass D. Storey*, with him *R. T. Mutzabaugh, Nash & Mutzabaugh* and *Storey and Bailey*, for appellants.

*George F. Taylor*, with him *Alter, Wright & Barron, F. J. Woods* and *James C. Bly*, for appellee.

OPINION BY MR. JUSTICE DREW, May 23, 1949:

These five suits which were consolidated for trial raise the question of whether a $30,000 fire insurance policy issued by United Mutual Underwriters to Moser Manufacturing Company, plaintiff, was in effect on October 19, 1944, when plaintiff's plant was partly destroyed by fire. The policy provided that each of the five defendant insurance companies was subject to 20% liability thereunder. After these suits were instituted, the parties stipulated that if the policy was in force, each defendant was obligated to pay the sum of $4,744.36. The jury returned a verdict against each defendant in that amount. Motions for judgment n. o. v. and new trial were overruled and judgments entered on the verdicts. From those judgments defendants now appeal.

Prior to July 1944, plaintiff carried fire insurance on its plant totaling $46,250. At that time H. Clay Johnston, Vice President of Houston Dunn, Inc., an

insurance agency, persuaded Melvin L. Smith, President of plaintiff, to permit the United Mutual Underwriters to put a binder ·on the plant for $32,000 additional insurance. In September of that year plaintiff authorized Johnston to obtain a policy for $30,000, which he did by completing the binder in that amount. That policy, which is the one here involved, was dated October 2, 1944, but was effective from July 17, 1944, the date of the binder. After plaintiff received the policy on October 5, 1944, Smith telephoned Johnston. According to plaintiff's version of that conversation which we must accept in considering the motion for judgment n. o. v., Smith told Johnston that plaintiff's attorney had advised him not to carry too much mutual insurance and that plaintiff would like to cancel the policy and have it replaced in an old line stock company; that Johnston agreed to write a stock policy but convinced plaintiff not to cancel the mutual policy at that time; and that if after further consideration plaintiff did not want the mutual policy, Smith should return it to Johnston for cancellation. Johnston's understanding of that conversation, however, was that the mutual policy was to be cancelled upon the issuance of the stock policy.

Following this conversation, a stock policy was issued by Globe and Republic Insurance Company and became effective October 16, 1944. The fire occurred three days later. In adjusting the loss, Globe and Republic admitted liability on its policy and paid plaintiff its pro rata share. The mutual policy was never returned for cancellation and is still in possession of plaintiff.

We are in full accord with the learned court below that there was a valid contract between plaintiff and defendants at the time of the fire. In the creation of an insurance policy, as in every other contract, there must be an offer and an acceptance which results in a meeting of the minds: *Ludwinska v. Hancock Mut. L. Ins.*

*Co.*, 317 Pa. 577, 178 A. 28; *Pennsburg Mfg. Co. v. Insurance Co.*, 16 Pa. Superior Ct. 91. Defendants contend that the telephone conversation between Smith and Johnston on October 5, 1944, indicated that plaintiff did not accept the mutual policy and there was, therefore, no meeting of the minds. The fallacy in that position is that defendants, not plaintiff, were the acceptors. Plaintiff, through Johnston, made an offer for insurance which was accepted by defendants. At that point the minds of the parties met. The policy was issued and delivered. There can be no doubt that prior to the telephone conversation there was a binding contract of insurance.

Defendants take the position that the effect of that conversation was to suspend the operation of the policy until plaintiff decided whether or not to cancel it. We find not a scintilla of evidence, and defendants could point to none, which lends itself to that conclusion. The testimony of Johnston and Smith, although conflicting in many instances, makes it clear that no such agreement was contemplated. The sole means revealed by the record by which the mutual policy could have been rendered inoperative was by cancellation.

It is of no aid to defendants to argue that Johnston was not their agent but was rather the general agent of plaintiff with full authority to cancel the policy. The contract provided: "This policy shall be cancelled at any time at the request of the insured: . . ." If Johnston was not defendants' agent, the record is devoid of any evidence showing that a request to cancel was communicated to defendants. It is obvious, however, that Johnston was not general agent for plaintiff. A general agent is one who is authorized to keep the owner's property insured by taking out policies, renewing them and replacing them without specific instructions from the insured: *L. Fr. W. L. Co., Inc., v. Buffalo I. Co.*, 318 Pa. 191, 178 A. 1. Johnston himself testified

that he could do none of those things without specific authorization from plaintiff. Nor did the mere fact that he procured the policy give him the authority to cancel it and substitute another in its place: *Jones v. Dubuque F. & M. Ins. Co.*, 317 Pa. 144, 176 A. 208; *Scott v. Sun Fire Office*, 133 Pa. 322; *Provident L. & T. Co. v. S. G. Ins. Co.*, 53 Pa. Superior Ct. 66. Any authority Johnston had to cancel the mutual policy arose out of this telephone conversation with Smith. What transpired during the discussion depends upon the credibility of the witnesses and was properly left to the jury. By its verdict the jury found that the only authority given to Johnston was to obtain a stock policy as *additional* insurance. That being true, the mutual policy was not cancelled and plaintiff is not barred from recovery on it by accepting payment on the stock policy.

Defendants urge that to enforce the mutual policy is to violate the statute against rebating [1] because a letter written the day after the fire by Johnston to plaintiff stated that the mutual policy should be returned for "flat cancellation", that is cancellation without charge for any premium during the time it was in plaintiff's possession. Here again the record fails to disclose any evidence that plaintiff agreed to such an arrangement. On the contrary, Smith testified that premiums were to be paid as long as the policy was in plaintiff's hands. To allow a letter written by the insurer after a fire to

---

[1] Act of May 17, 1921, P. L. 682, Section 346, provides: "No insurance company . . . shall offer . . . any rebate of . . . the premium . . . which is not specified in the policy. . . ."

Act of May 17, 1921, P. L. 789, Section 635, provides: "No insurance agent, solicitor, or broker . . . shall offer . . . any rebate of . . . the premium payable on the policy . . . which is not specified in the policy. . . ."

Act of May 17, 1921, P. L. 789, Section 636, provides: "No insured person or party . . . shall, directly or indirectly, receive or accept . . . any rebate of premium . . . other than such as are specified in the policy."

show an agreement to rebate premiums and thus render the contract unenforceable would be to permit wholesale avoidance of liability. Such a result would be in complete conflict with the legislative intent and cannot be countenanced by this Court.

Plaintiff introduced into evidence three letters signed with Johnston's name, one admittedly signed by him and the other two actually written and signed by Johnston's office manager, Mrs. Neff. Those letters were offered to impeach Johnston's credibility. In respect to them, defendants have taken alternative positions. In support of their motion for judgment n. o. v., they maintain that the letters prove that the mutual policy was not in effect at the time of the fire; while in their motion for new trial they allege that the letters written by Mrs. Neff were inadmissible to attack Johnston's credibility.

The first of those letters was written by Mrs. Neff on October 5, immediately following the telephone conversation between Smith and Johnston. That letter stated that the mutual policy was being rewritten in an old line stock company but that "you [plaintiff] are fully protected under . . . [the mutual] policy *also until it is returned to us for cancellation.*" (Italics added.) The other two letters were written after the fire and both asked that the mutual policy be returned so that it could be cancelled. Those letters unequivocally show that the policy was not cancelled since it was not returned to Johnston.

There is no merit to defendant's objection to the admission of the two letters written by Mrs. Neff. Johnston had authorized her to write such letters and sign his name to them. No citation of authority is necessary to support the proposition that the properly constituted acts of an agent are, as to third parties, the acts of the principal and he is bound by them. Nor was it error for the learned trial judge to charge that it was incum-

bent on defendants to show that the policy was cancelled. Where, as here, cancellation is relied upon as an affirmative defense, the burden is on defendant to prove an effective cancellation of the policy prior to the loss: *Schock v. Penn Twp. Mut. Fire Ins. Assn.,* 148 Pa. Superior Ct. 81, 24 A. 2d 738.

Upon a careful review of the whole record, we find no reason to disturb the judgments of the court below.

Judgments affirmed.