Smiler *v.* Toll, Appellant.
Toll, Appellant, *v.* Pioneer Sample Book Company.

Argued November 15, 1950 and November 20, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ. (Reargued, as to Appeal No. 213, on November 19, 1952).

*Joseph E. Gold,* with him *Paul M. Chalfin, Leonard L. Ettinger* and *Arthur Silverman,* for appellants.

*Walter Schachtel,* with him *Samuel L. Einhorn* and *Einhorn & Schachtel,* for appellee.

OPINION BY MR. JUSTICE BELL, February 13, 1953:

Smiler sued Aaron and Bessie Toll for breach of an agreement of sale made between them; the Tolls in a separate suit sued the Pioneer Sample Book Company (hereinafter called Company) as the alleged principal of Smiler, for breach of the aforesaid agreement of sale. The agreement was under seal. Unfortunately these cases were not consolidated and tried together in the Court below, as they should have been; they have been consolidated here and since the case in which the Tolls were plaintiffs reached this Court first, it will be considered first in this Opinion.

## TOLL v. PIONEER SAMPLE BOOK COMPANY

Mr. and Mrs. Toll on April 26, 1949, (10 months after they had been sued by Smiler for breach of the contract in controversy), brought an action of assumpsit against Pioneer Sample Book Company to recover the balance of purchase money allegedly due them under a sales agreement made by Lionel Friedmann & Co., agent for Aaron Toll as the seller and Sidney Smiler as the buyer. Toll agreed therein to convey the property 6224-34 Paschall Avenue, Philadelphia, to Sidney Smiler or his nominee. *The most important question here involved arises from the fact that the agreement was under seal.* Sidney Smiler, as the purchaser, executed this agreement; the Pioneer Sample Book Company did not execute it and was not a party to it, nor was it named or referred to in the agreement.

The Tolls' original complaint named the Company as the *undisclosed* principal. When the Court below sustained preliminary objections, the Tolls amended their complaint and named the Company as a *disclosed* principal, alleging that they knew from the beginning of the negotiations that Smiler, who executed the agreement, was the Vice President and General Manager of the Company and was acting for the Company in making the purchase. Furthermore, the check of $9500. which Smiler gave to the Tolls as his down payment was the check of the Company.

The sales agreement between the Tolls and Smiler was not only under seal but also contained a provision: "This agreement contains the entire contract between the parties and there are no oral agreements or representations between the parties hereunto appertaining." The Tolls give no consideration or effect to this provision except to say that it cannot bar a suit against either a disclosed or undisclosed principal.

The lower Court then sustained preliminary objections to the amended complaint; judgment was entered thereon; and the Tolls took this appeal.

The Tolls' argument may be summarized as follows: *A seal today* is surplusage, unnecessary, *meaningless and without any effect;* therefore, this is only a simple contract for the sale of real estate; and a disclosed or undisclosed principal may sue or be sued on a simple contract. Unfortunately, the case is not as simple as the Tolls contend; and it will be necessary to analyze and review the cases and principles governing sealed instruments in order to eliminate the confusion which has arisen.

The general rule is well settled that a principal, disclosed or undisclosed, is liable for the acts and contracts, if not negotiable or sealed, of his agent within the scope of the agent's authority: *Lancaster v. Knickerbocker Ice Co.,* 153 Pa. 427, 26 A. 251; *Youghiogheny Iron Co. v. Smith,* 66 Pa. 340, 343; *Beymer v. Bonsall,* 79 Pa. 298; *Brown v. German-American Title & Trust Co.,* 174 Pa. 443, 448, 34 A. 335; *Moser Mfg. Co. v. Donegal & Conoy Ins. Co.,* 362 Pa. 110, 115, 66 A. 2d 581; *Dodson Coal Co. v. Delano,* 266 Pa. 560, 565, 109 A. 676; 3 C.J.S. Agency, §§231, 239, 240, 244; 2 Am. Jur. Agency, §346; Restatement, Agency, §§147, 149. In *Lancaster v. Knickerbocker Ice Co.,* 153 Pa., supra, the Court said (p. 432): "It is text-book law applied and enforced in a long and unbroken line of cases, that where a *simple* contract, other than a bill or note, *is made by an agent in his own name,** his undisclosed principal may maintain an action, or be sued, upon it."

Where, however, a contract *made by an agent in his own name* is *under seal,* the general rule is that a principal is not bound, unless he is a party to the con-

---

* Italics throughout, ours.

tract or named therein as one for whose benefit it was made: A.L.I., Restatement, Agency, §151; 2 C.J.S., Agency, §133b(1); 3 C.J.S., Agency, §§240, 246; 2 Am. Jur., Agency, §245; 32 A.L.R. 162; *Bellas v. Hays*, 5 S. & R. 427; *Ardesco Oil Co. v. North American Oil & Mining Co.*, 66 Pa. 375, 380; *Shermet v. Embick*, 90 Pa. Superior Ct. 269; *Ottman v. Nixon-Nirdlinger*, 301 Pa. 234, 241, 242, 151 A. 879.

This general rule applicable to contracts under seal has been modified or no longer prevails in many jurisdictions where the distinction between a sealed and an unsealed instrument has been abolished or a seal is considered unnecessary and surplusage; and the Tolls contend that Pennsylvania has followed this modern trend.

In some transactions and for some purposes a seal is considered as surplusage: *Ottman v. Nixon-Nirdlinger*, 301 Pa. 234, 241, 151 A. 879; *Dick v. McWilliams*, 291 Pa. 165, 170, 139 A. 745; *Lancaster v. Knickerbocker Ice Co.*, 153 Pa. 427, 432, 26 A. 251; *Dubois's Appeal*, 38 Pa. 231; *Jones v. Horner*, 60 Pa. 214; *Schmertz v. Shreeve*, 62 Pa. 457. This is especially true as to the *validity* of a deed or "instrument in writing for conveying land": Section 9, Act of April 1, 1909, P. L. 91, as amended, 21 PS §8; and certainly a seal is not necessary to validate an agreement of sale.

*But it does not necessarily follow,* as the Tolls contend, that a seal is entirely meaningless or without any effect. To so hold would in many instances negate the acts and intentions of the parties; and would require us to change or overrule many established principles and decisions with respect to sealed instruments which parties have relied on for a century. What, for example, will happen to the familiar and so frequently used straw-man real estate transactions; what becomes of our rule which holds that a seal imports a considera-

tion; and what statute of limitations will apply to instruments under seal if a seal is, for all purposes, not only surplusage but also meaningless? The dangers inherent in establishing, by judicial decision, such a fundamental change in our law were clearly pointed out by Justice BENJAMIN CARDOZO in "Paradoxes of Legal Science", 70, and by Judge TAULANE in *Rader v. Bernstein*, 15 D. & C. 341, and by the Court of Appeals in *Crowley v. Lewis*, 239 N.Y. 264, 146 N.E. 374.

Without attempting to reconcile all the cases, it will suffice to say that our recent cases appear to recognize rather than to abrogate the general rule hereinabove set forth. *Four exceptions* have been made to this general rule:

(1) Cases involving (a) laborers and material men or (b) certain other third party beneficiaries: *Com. v. Great American Indemnity Co.*, 312 Pa. 183, 167 A. 793; *Brill v. Brill*, 282 Pa. 276, 127 A. 840; *Com. v. National Surety Co.*, 253 Pa. 5, 97 A. 1034; *Trustees of the Methodist Episcopal Church v. Equitable Surety Co.*, 269 Pa. 411, 112 A. 551; *Philipsborn v. 17th & Chestnut Holding Corp.*, 111 Pa. Superior Ct. 9, 169 A. 473.

(2) *Where a privity of estate exists* between a party to the sealed instrument (the lessor of real estate) and the undisclosed principal of the *assignee* (of lessee) and the principal is in actual possession or has the beneficial enjoyment of the property: *Ottman v. Nixon-Nirdlinger*, 301 Pa. 234, 151 A. 879.

(3) Where an agent signs a sealed agreement of sale of real estate as "agent"; and the body of the agreement itself clearly discloses that the agent was acting for his principal: *Yentis v. Mills*, 299 Pa. 25, 148 A. 909.

(4) Under the Partnership Act, where a partner executes a sealed contract in his own name, but the

work was done for the benefit of the partnership : *Dinger v. Friedman*, 279 Pa. 8, 123 A. 641.

The Tolls, aided by experienced counsel, and knowing, as they allege, that Smiler was acting for the Company, entered into a carefully prepared agreement, not with the Company, but with Smiler, to sell their real estate, not to the Company, but to Smiler or his nominee. The agreement, we repeat, was not executed by the Company nor was the Company named or referred to therein. Although a seal was not necessary to the validity of the agreement, a seal nevertheless, was added. Why? Can it reasonably be said, in the light of the long-established rule in Pennsylvania concerning sealed instruments, that the addition of a seal was intended by the parties to be meaningless?

Moreover, the agreement contained a clearly understandable provision: "This agreement contains the entire contract between the parties and there are no oral agreements or representations between the parties hereunto appertaining." Was not the intention of the parties clear from all these facts, as well as from the agreement itself, that Smiler alone, and not the Pioneer Sample Book Company, should be bound. Cf. *Hauer v. Martin*, 284 Pa. 407, 131 A. 187; *Gross v. Exeter Machine Works, Inc.*, 277 Pa. 363, 121 A. 195; *Lloyd & Elliott v. Lang*, 118 Pa. Superior Ct. 190, 180 A. 74.

It may not be amiss to add that in this case there was no misrepresentation, deceit, fraud, accident or mistake; the Tolls were not over-reached; the purchase price was fair; and if Smiler breached the agreement, the Tolls had the right to retain the $9500. down money and to sue Smiler to recover the balance of the purchase price. We know of no sound reason why, under these facts and circumstances, the law as to sealed instruments should be completely abrogated and the Tolls should now be permitted, in good morals or in law, to

sue the Pioneer Sample Book Company on a sealed instrument to which the Company was not a party or named therein.

The Order and Judgment in the case of Aaron Toll and Bessie Toll v. Pioneer Sample Book Company is affirmed.

SMILER v. TOLL and LIONEL FRIEDMANN & CO.

Smiler, on June 10, 1948, ten months before Aaron Toll and Bessie Toll sued Pioneer Sample Book Company, brought an action in assumpsit against Aaron Toll and Bessie Toll (and for the purpose of recovering interest, their agent, Lionel Friedmann & Company) to recover the sum of $9500. which Smiler had deposited (with Lionel Friedmann & Company, agent) under the hereinabove mentioned agreement of sale of premises 6224-34 Paschall Avenue, Philadelphia. By a rider attached to and forming a part of the agreement of sale, it was provided: *"Buyer shall use his best efforts\** to obtain a mortgage in an amount of at least Fifty-seven thousand ($57,000.00) dollars bearing interest at a rate of not more than $4\frac{1}{2}\%$ per annum and requiring payments on account of principal of not more than 5% of the original principal amount per annum. In the event Buyer is unable to obtain a mortgage on terms at least as favorable as hereinabove set forth by May 24th, 1948, *Buyer may at Buyer's option terminate this contract* and in such event this contract with all rights and obligations shall become null and void and all copies hereto shall be returned to Seller for cancellation and the deposit money shall be returned by Seller to Buyer. Notice of the Buyer's decision shall be given in writing to Joseph E. Gold, Esq., attorney for the Seller, no later than 4:00 p.m. on May 24th, 1948, and in the absence of said notice, the Buyer shall be obligated to make settlement as the Agreement of Sale provides."

---

\* Italics throughout, ours.

The case was heard before Judge ALESSANDRONI without a jury. He found for the plaintiff Smiler and against Mr. and Mrs. Toll in the sum of $9500., with interest from May 24, 1948.* The Court below found that Friedmann & Company should not be liable for interest since it acted merely as a stake-holder.

Mr. and Mrs. Toll raised two questions: (1) Whether Smiler was the real party in interest; and (2) Whether Smiler had used his best efforts to obtain the mortgage upon which the sale and the option to terminate were conditioned. We shall consider these in inverse order.

Smiler sought unsuccessfully to obtain a mortgage of $57,000. from The Central Mortgage Co., Penn Mortgage Co., Federal Savings, Prudential Life Insurance Co., Equitable Life Insurance Company, Metropolitan Life Insurance Co., Western Saving Fund Society, Philadelphia Saving Fund Society, and many individuals with possible sources of mortgage money. There was competent and ample evidence to sustain the verdict of the trial Judge and to find, as did the Court below, that Smiler used his best efforts to obtain the mortgage and being unable to do so, had an option which he properly exercised, to terminate the contract and recover back the deposit money.

The other contention which is vigorously urged by the Tolls is that the suit should have been brought by Pioneer Sample Book Company instead of by Smiler, since it was the real party in interest. There is no merit in this contention. Sidney Smiler made and executed the contract; it was under seal; he was named as the buyer therein; he gave the deposit or down money; and he has always contended that he was acting

* Attorneys for plaintiff and defendants stipulated in writing that the trial Judge need not file formal findings of fact or conclusions of law; consequently no findings or conclusions were filed.

for himself and not for another even though the Company was going to occupy the premises and to give its collateral bond in connection with the mortgage. Smiler undoubtedly had a legal right to bring the suit and to discharge the rights and obligations arising thereunder: *Kusmaul v. Stull,* 356 Pa. 276, 51 A. 2d 602; *Purdy v. Massey,* 306 Pa. 288, 159 A. 545; *Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A. 2d 828. In *Purdy v. Massey,* 306 Pa., supra, a similar question was raised and decided adversely to the Tolls. The Court (p. 296) said: "It is also contended by defendants that the plaintiff has no interest in the present cause of action, and is therefore not entitled to recover. At the trial an offer was made to show that plaintiff has no financial interest in the property or in the mortgage. An objection to this offer was sustained by the court, which action is assigned as error. The offer was properly refused. . . . she is the legal plaintiff, and as such has the right to sue, and whether or not an assignment was made by her is immaterial: American Mfg. Co. v. Morgan Smith Co., 25 Pa. Superior Ct. 176. It can be no concern of defendants, certainly can in no way affect their rights, if recovery is had in the name of the legal plaintiff: Berks Co. v. Levan, 86 Pa. 360. The result in either event is an adjudication of the issue: Adams v. Edwards, 115 Pa. 211; C. H. Hardy Auto Co. v. Posey, 50 Pa. Superior Ct. 399. The suit was brought in the name of the person with whom defendants contracted and her right alone is in question: Guaranty Trust & Safe Deposit Co. v. Powell, 150 Pa. 16. So long as the bond held by the plaintiff represents value, it is immaterial whether plaintiff is acting in her own right or as the nominee of someone else. This is a matter with which the defendants have no concern."

The Tolls further contend that since the Pioneer Sample Book Company was the real party in interest it

would in any event have to be joined as party plaintiff under Rule 2002 (b) of the Procedural Rules. Two lower Courts found against the Tolls on this proposition and we believe correctly so. The identical question was raised and decided in *Kusmaul v. Stull,* 356 Pa., supra, where this Court said (p. 280) : "Rule 2002 (b) of the Procedural Rules provides: 'A plaintiff may sue in his own name *without joining* as plaintiff or use-plaintiff any person beneficially interested when such plaintiff . . . (2) is a person *with whom or in whose name* a contract has been made for the benefit of another.' *A real party in interest in any given contract or chose in action is the person who can discharge the duties created, and control an action brought to enforce rights.* 'This does not mean that the real party in interest is the person who is ultimately entitled to the benefit of any recovery obtained nor the person beneficially interested therein. In many cases, the real party in interest will also be a person beneficially interested in the cause of action, but this is not necessary. *If the person in question has the ability to discharge the obligation,* even though he might violate a duty to a third person in so doing, *and if the person in question can control the action he is the real party in interest'* ; Goodrich-Amram Procedural Rules Service, section 2002(2)-3. In the instant case Gertrude B. Kusmaul was the principal named in the agreement of sale. It was she who could discharge the obligations and enforce rights created therein."

In *Spires v. Hanover Fire Insurance Co.,* 364 Pa., supra, this Court, speaking through Justice, now Chief Justice Stern, said (p. 57-58) : "Rule 2002 is merely procedural in scope and does not work any change in the substantive law; . . . the real party in interest in any given contract or chose in action is the person who can discharge the duties created and control an action

brought to enforce rights, . . . To be the real party in interest one must not merely have an interest in the result of the action but must be in such command of the action as to be legally entitled to give a complete acquittance or discharge to the other party upon performance."

We hold, therefore, that Smiler had a right to bring this action in his own name for breach of a sealed agreement which he executed in his own name; and that he did not have to join the Pioneer Sample Book Company as plaintiff or use-plaintiff.

The Judgment in the case of Sidney Smiler v. Aaron Toll and Bessie Toll and Lionel Friedmann & Company is affirmed.

---

CONCURRING OPINION BY MR. JUSTICE JONES:

I would dismiss the plaintiffs' appeal in the case of *Toll v. Pioneer Sample Book Company* at No. 213 January Term 1950, as moot. Our affirmance this day of the judgment in *Smiler v. Toll* at No. 139, January Term 1951, in which I join, conclusively abrogates the contract of sale whereof the Tolls sought specific performance in their above-mentioned suit against Pioneer Sample Book Company for the unpaid balance of the purchase price.

---

CONCURRING OPINION BY MR. JUSTICE CHIDSEY:

I concur in the opinion of the majority in the case of *Smiler v. Toll*. In *Toll v. Pioneer Sample Book Company*, I concur in the result but cannot agree with the grounds upon which the majority opinion rests. For the reason hereinafter stated, I would dismiss the appeal.

In *Toll v. Pioneer Sample Book Company,* the majority opinion affirms the order of the court below on two grounds: (1) a disclosed principal is not liable on a sealed instrument where the principal has not signed the contract and is not referred to in the agreement, and (2) the contract itself protected the disclosed principal from liability by the provision: "This agreement contains the entire contract between the parties and there are no oral agreements or representations between the parties hereunto appertaining.".

I think this Court should be hesitant to give to a seal its full ancient effect, since the use of a seal has lost much of its former significance and solemnity. A seal was entitled to much weight when most contracting parties could not write and a seal was made by heating wax and making an impression therein with the ring or individual seal of the signatory party. The very mechanics of such an act were impressive and served to make the parties so sealing an instrument aware of the importance and legal effect of the contractual obligation they were undertaking. Today, with literacy so general, a wax seal is a curiosity and almost unknown in ordinary business transactions. Most legal forms are prepared by printers and invariably the word "SEAL" or "L.S." (which is its legal equivalent, *Hazleton National Bank v. Kintz,* 24 Pa. Superior Ct. 456) is printed on the form at the end of the line intended for the signature. These forms are often signed by the parties to agreements without any knowledge of the history or legal significance of a seal or the effect of the printed word "SEAL" at the end of the line. It has even been held that *any* mark, including a mere dash or naked, straight line drawn after a signature may operate as a seal: *Appeal of William Hacker, Trustee,* 121 Pa. 192, 15 A. 500. Should the mere presence of such a line or the presence of a few letters printed on a pre-

pared form be held to be conclusive in the determination of the rights of contesting parties to property valued by the parties at $95,000? Or is such a holding so out of step with the business practices of today that the presence of a seal or one of its substitutes should be given a less conclusive effect?

In some jurisdictions seals are given no effect at all. In other jurisdictions if the seal is unnecessary to the validity of the instrument it is disregarded as surplusage: 3 C.J.S. §246, p. 174. The majority opinion concedes that a seal is not necessary to validate an agreement of sale, but holds that the presence of the word "seal" protects the disclosed principal from suit on such agreement of sale. This holding is apparently motivated by the thought that to hold otherwise would mean that hereafter seals would have no effect at all, and that established business practices would be affected, and that such a fundamental change should be made by the Legislature. To regard the seal as surplusage in this case would not eliminate the use or proper effect of seals, nor require any legislative change in existing law.

Seals have lost much of their former sanctity in this State. As was stated in *Brill v. Brill,* 282 Pa. 276, 282, 127 A. 840, by the present Chief Justice when he was sitting as a Judge of the Court of Common Pleas in an opinion adopted by this Court: "There was formerly a question as to whether a third person not a party to a contract could bring suit on it when it was under seal, and therefore whether the action had to be in covenant instead of assumpsit (Strohecker v. Grant's Executors, 16 S. & R. 237), but this was a mere technicality dependent upon the old rules of pleading, and apparently no longer exists, since there are many cases in the Pennsylvania reports where actions by third persons upon bonds under seal have been allowed as, for example, in Com. v. National Surety Company, [253 Pa. 5] . . .".

The majority opinion recognizes and sets forth four exceptions to the general rule that a principal is not liable on a sealed contract made by his agent where the principal is not a party thereto or named therein as one for whose benefit it was made. When analyzed, these four exceptions can be reduced to two, (1) where the intent of the parties is evident that a disclosed principal or other party although unnamed is entitled to the benefits or assessed with the burdens of a contract, (2) where the principal is undisclosed but there is privity of estate between him and his agent, and in addition the principal is in actual possession or has beneficial enjoyment of the property.

The first exception includes the cases cited by the majority opinion where the identity or existence of an unnamed party is ascertainable from the instrument, as in third party beneficiary contracts, or where a contract signed as "agent" discloses that the agent was acting for his principal. It is true that in these instances the identity of the principal or existence of an unnamed party was ascertainable from the contract itself, but the basic reason for the exception is the ascertainment of the intent of the signatory parties as to the rights and duties of unnamed parties, for this purpose the source of ascertaining intent in this regard should not be limited to the contract itself but should include the surrounding circumstances if they serve to show such intent. Thus in the present case (*Toll v. Pioneer*) in their complaint the Tolls averred that the president of the defendant corporation inspected the premises, passed upon the terms of the agreement before it was signed, and the down money of $9,500 was paid with the corporation's check. There were other circumstances tending to establish that Pioneer was the principal in the transaction and Smiler, who was the corporation's vice-president and general manager, only its

agent. In *Dinger v. Friedman et al.*, 279 Pa. 8, 123 A. 641, the plaintiff was permitted to show by evidence dehors the contract in question that although the contract was executed by an individual under seal, it was not his individual undertaking but that of a partnership of which he was a member. While that is a partnership case, it logically supports the proposition that the intent of the signatory parties as to the rights and duties of unnamed parties can be sought and this intent may · be ascertained from surrounding circumstances despite the existence of a seal and its archaic attribute in this regard. Unless the exception to the general rule under discussion is extended to include the intent of the parties in this regard as disclosed by the surrounding circumstances, their intent in many instances would be frustrated and injustice done. Where there is no seal, parol evidence is admissible to charge the principal or to enable the principal to sue in his own name on a contract executed by his agent, although there is no evidence of agency in the contract itself. See: Wigmore on Evidence, 3rd Ed., Vol. 9, §2438, p. 124. A seal as a substitute for the actual intention of the parties is a dying ember in the ashes of the past and should not be rekindled.

The second exception to the general rule makes no pretense of effectuating the intent of the parties, but is merely an application of the equitable principle that one cannot accept the complete benefit of a transaction without also assuming its burdens. Thus in *Ottman et al. v. Nixon-Nirdlinger et al.*, 301 Pa. 234, 151 A. 879, where there was privity of estate and the undisclosed principal had beneficial enjoyment of the property, an *undisclosed* principal acting through a straw man was held to be subject to suit on a sealed contract to which it was not a party, but this decision did not destroy the efficacy of straw transactions. Nor would the allow-

ance of suit against a *disclosed* principal in the instant case destroy straw transactions as the majority opinion fears. The justification for the allowance of straw man real estate transactions is set forth in Ladner's Real Estate Conveyancing, Vol. 1, Section 81-B(a), p. 211, as follows: "This method of protecting oneself from personal liability on a mortgage is usually practiced by persons who deal extensively in real estate. Such men from the very nature of their business cannot afford to be personally responsible for the payment of the principal of a mortgage after they have conveyed away the property, yet they would be so long as the mortgage remains if they executed the bond.". Persons engaged in buying and selling real estate can continue to operate through a straw man without being subject to liability since there is usually no privity of estate with the straw man and they are not in actual possession of the property nor do they have the beneficial enjoyment of the property after they have conveyed it away. The fear of the majority that straw transactions would be destroyed if the seal be regarded as mere surplusage in the present case is unfounded.

The majority opinion also expresses concern for the rule that a seal imports consideration and doubt as to the statute of limitation to be applied if the seal be regarded as surplusage. The answer to the questions posed is clear. If it is the intent of the parties as disclosed from an examination of the instrument itself or the surrounding circumstances that the seal was added with the intent of importing consideration, then that intent will be effectuated, but if the contract shows on its face that there is sufficient consideration, or words expressing an intention to be legally bound, (Act of May 13, 1927, P. L. 985, 33 PS §6), then the seal is surplusage for that purpose. If an action on a contract is commenced within six years, then the seal is sur-

plusage as far as the statute of limitations is concerned, but if suit is commenced after the expiration of the statutory period, the seal is effective to take the agreement out of the statute.

The majority opinion inferentially recognizes that the use of a seal is primarily a question of the intent of the parties when it states: "To so hold [that a seal may be surplusage] would in many instances negate the acts and intentions of the parties;", and "Can it reasonably be said . . . that the addition of a seal was intended by the parties to be meaningless?". The majority opinion then goes on to support its conclusion that the parties intended to exclude the disclosed principal from liability by quoting the provision of the contract: " 'This agreement contains the entire contract between the parties and there are no oral agreements or representations between the parties hereunto appertaining.' ", as evidence of their intention that only the named parties should be liable on the contract. "Entire contract" refers to the mutual promises and conditions in the contract, not to the parties. The provision was intended to prevent parol evidence of the intent of the parties as to the terms and obligations of the contract. It should not be construed to limit liability to the named parties to the exclusion of a disclosed principal having the beneficial interest therein.

I would dismiss the appeal in *Toll v. Pioneer* for the reason that the disposition of the companion case of *Smiler v. Toll* conclusively determines on the merits that the contract in question was properly terminated and this makes moot the issue which arises out of the attempt by plaintiffs in *Toll v. Pioneer* to enforce the contract.