## Holiday Pocono Civic Association, Inc. v. Benick

*Gary F. Dobias*, for plaintiff.
*Michael L. Ozalas* of *Nanovic & McKinley*, for defendant.

LAVELLE, *P.J.*, April 21, 1978—This matter is before us on defendants' preliminary objections to plaintiff's complaint in assumpsit. The issue raised by the pleadings is whether a property owners' association may enforce against a lot owner an affirmative covenant in the latter's deed to pay dues and assessments.

## FACTUAL BACKGROUND

On a demurrer, of course, all well-pleaded facts in plaintiff's complaint and all inferences fairly deducible therefrom are deemed to be admitted: Adams v. Speckman, 385 Pa. 308, 122 A. 2d 685 (1956). These facts may be summarized as follows:

On October 13, 1960, defendants entered into a written agreement to purchase from The Holiday Poconos, Inc., two lots in the latter's development

near Albrightsville, Kidder Township, Carbon County, Pa. Paragraph 12 of the agreement provided that:

"An association of property owners is to be formed and designated by such name as may be deemed appropriate, and when formed, the buyer covenants and agrees that he, his executors, heirs or assigns, shall be bound by the by-laws, rules and regulations as may be duly formulated and adopted by such association and that they shall be subject to the payment of annual dues and assessments of the same."

On or about November 21, 1963, deeds were executed and delivered to defendants by the developer conveying the two lots in question. Both deeds contained the covenant to pay assessments in language identical to that set forth in paragraph 12 of the agreement of sale.

Holiday Pocono Civic Association, Inc. (hereafter "the association") was formed on January 10, 1964, pursuant to the Pennsylvania Non-profit Corporation Law of May 5, 1933, P.L. 289, 15 P.S. §7001 et seq. The association owns and maintains all of the roads in the development, as well as two lakes, a clubhouse, a playground, and other facilities and amenities maintained for the use and enjoyment of residents.

The association's by-laws provide that all lot owners shall be members of the association (article VI). Annual and special assessments are established at general membership meetings (article VII), at which each member in good standing (i.e. not delinquent in the payment of dues or assessments) is entitled to vote (article XI). All members

are entitled to equal use of the association's facilities (article IX).

The purposes of the assessments are as follows (article VII (F)):

1—The maintenance and improvement of the assets of the association.

2—To defer the cost of operating the association.

3—For the creation of additional assets that will be beneficial to the members of the association.

4—To provide social activities, recreational facilities and undertake such other activities that will benefit the members of the association.

5—For such other expenditures as are necessary providing every expenditure is beneficial to all members of the association.

On April 10, 1977, the developer executed a power of attorney, in effect delegating to the association its rights to enforce the deed restrictions, conditions and covenants, including paragraph 12 relating to payment of dues and assessments. The power of attorney is revocable upon four months' written notice to the association.

The association seeks to recover from defendants the 1977 assessment in the amount of $105.

## DISCUSSION

Defendants' preliminary objections, in the form of a demurrer, consist of three arguments:

(1) that plaintiff lacks standing to enforce the covenant;

(2) that the covenant is unenforceable against non-members of the association; and

(3) that the covenant is too vague or indefinite to be capable of enforcement.

We reject all three contentions for the reasons which follow.

## (1) DOES PLAINTIFF HAVE STANDING?

Defendant's attack on plaintiff's standing is a two-pronged argument: first, that plaintiff is not the real party in interest within the meaning of Pa.R.C.P. 2002(a); and, second, that plaintiff is not within that category of parties which the covenant contemplated to be benefited.

Pa.R.C.P. 2002(a) provides that "all actions shall be prosecuted by and in the name of the real party in interest." The party who can control a particular action and who has the right to discharge the obligation sought to be enforced is the real party in interest within the meaning of the rule: Smiler v. Toll, 373 Pa. 127, 94 A. 2d 764 (1953). Further, it is well established that an assignee of a chose in action is the real party in interest, and not the original obligee thereunder: Butler Fair and Agriculture Assn. v. Butler School District, 389 Pa. 169, 132 A. 2d 214 (1957); Wilcox v. Regester, 417 Pa. 475, 207 A. 2d 817 (1965).

Applying these principles to the facts presented, it appears clear to us that plaintiff, and not the developer, is the real party in interest to enforce the provisions of the covenant. The power of attorney, pleaded in the complaint and attached thereto as exhibit "D," indicates that plaintiff possesses full authority to control any action brought to enforce

the covenant, including any settlement or compromise thereof. We therefore find that plaintiff is the real party in interest herein.*

We must also reject defendant's argument that plaintiff is not within the class of parties who have standing to enforce the covenant. In support of their position, defendants rely upon paragraph 15 of the deed restrictions, which provides as follows: "The restrictions as herein provided shall apply to the above premises and may be changed by the Grantor when desired by it or its successors, said restrictions being imposed *for the benefit of the remaining lands of the Grantor and lands which may be hereafter acquired.*" (Emphasis supplied.) From the foregoing defendants argue that the covenant to pay assessments would be enforceable, if at all, only by other lot owners in the development. Even if, arguendo, we assume the validity of their assumption, it is clear that plaintiff would be included in this category of parties benefited since it is an actual landowner in the development holding title, as we have seen, not only to all of the roads, but also the lakes, playgrounds, and other recreational facilities, as well as certain unspecified vacant lots reserved for future recreational development. It appears to us clear that plaintiff has standing to seek enforcement of the covenant as to the land and facilities it now owns. See Neponsit Property Owners' Assn. v. Emigrant Industrial Sav. Bank, 278 N.Y. 248, 15 N.E. 2d 793 (1938).

---

*We need not consider plaintiff's status absent the power of attorney. However, plaintiff may well be a creditor-beneficiary of a third-party beneficiary contract. See supplemental opinion in Holpoco Civic Assoc. v. Jarell, 3 Carbon 354 (1971).

## (2) IS MEMBERSHIP A SINE QUA NON OF ENFORCEABILITY?

Defendants' second argument is that lot owners who are non-members of plaintiff association are not liable for payment of its dues and assessments. In support of their contention, they rely upon this court's decision in Holpoco Civic Assn. v. Jarrell, supra. However, Holpoco can be readily distinguished from the instant case in that the by-laws of that association appeared to integrate the duty to pay dues and assessments with continued membership in the association. Plaintiff's by-laws, on the other hand, are quite different in that membership is an automatic and involuntary consequence of lot ownership, does not terminate by reason of delinquency, and is not dependent on any affirmative act of acceptance on the part of the lot owner to become operative.

Even if the foregoing were not the case, however, we would still be constrained to find that the obligation to pay dues and assessments exists independently of membership in the association. An argument similar to that raised by defendants herein was considered by the New York Supreme Court in Sea Gate Association v. Fleischer, 211 N.Y.S. 2d 767 (1960). Entering judgment in favor of plaintiff, that court observed, at 778-779:

". . . all of the cited decisions establish the principle that membership in the Association bears no relationship to the rights of the property owners in so far as their enjoyment of the easements running with their property is concerned. The right of the Association to exercise the control of the easements and to maintain them in condition so that they can

be mutually used and enjoyed by all property owners has long been settled by the courts. Inherent in its right of management is the right to maintain. Maintenance costs money. *Those who are entitled to enjoy the easements are the ones who must pay the cost of maintenance. Membership in the corporation is not that which gives the right to the property owners to enjoy the easements and services provided by the Association. It is the ownership of property which effects that result."* (Emphasis supplied.)

See also Lincolnshire Civic Assn., Inc. v. Beach, 364 N.Y.S. 2d 248 (1975), where, as herein, association membership was automatic upon lot ownership.

Acceptance of defendants' argument would, of course, in large measure effectively abrogate the covenant. Any lot owner could escape his obligation to pay dues and assessments simply by rejecting association membership. Privately developed residential communities such as Holiday Poconos are in many respects analogous to mini-governments and are totally dependent upon collection of such assessments in order to maintain and clear roads and provide other essential facilities and services, as well as recreational amenities which benefit all property owners in the development. The court needs no crystal ball to prognosticate the future of an asssessment-less development. Without such assessments, property owners' associations would be powerless to operate. The unmaintained roads and recreational facilities would undoubtedly fall into disrepair and then be abandoned by associations. Property owners would ultimately be looking

to already overburdened township and county governments for the rehabilitation and take-over of the roads and recreational facilities.

We accept as sound logic and concur with Sea Gate, supra, that one purchasing property in such a community impliedly accepts an offer for the provision of various services necessary to the well-being of the community, and when impliedly accepting such offer he impliedly agrees to pay a proportionate share of the costs of such services (at page 781). See also Harbor Hills Landowners v. Manelski, 318 N.Y.S. 2d 793 (1970); Tomkins Lakes Estate Association v. Speisman, 273 N.Y.S. 2d 457 (1966).

## (3) IS THE COVENANT VOID FOR VAGUENESS AND UNCERTAINTY?

Lastly, defendants argue that the covenant is too indefinite to be capable of enforcement because it is without limitation as to the amount of the assessments and without restriction as to the purposes or uses to which the funds are to be put.

At the outset we must note that the law does not favor, but rather leans against, the vitiation of contracts because of uncertainty. The court will, if possible, construe a contract so as to carry into effect the reasonable intention of the parties if that can be ascertained. Hence the maxim, "Id certum est quod certum reddi potest," or, "That is certain which can be made certain." Portnoy v. Brown, 430 Pa. 401, 243 A. 2d 444 (1968); Rossmassler v. Spielberger, 270 Pa. 30, 112 Atl. 876 (1921).

In Leh v. Burke, 231 Pa. Superior Ct. 98, 331 A. 2d 755 (1974), the foregoing principle was

applied in the interpretation of the following affirmative convenant in the deed: " '. . . [i]n the event that the surface of Greenwood Road North should ever be paved, . . . the Grantees, . . . shall bear their proportionate share of the expense of such improvements.' " Rejecting the arguments of the lot owners that the covenant was too vague and indefinite because it failed to state the nature and extent of the improvements contemplated nor the method for determining the various defendants' proportionate shares, the court enforced the covenant and observed, at 104:

". . . imprecision is not fatal to a covenant in a deed. . . . The rule is that if an agreement is not clearly expressed, an effort is made by the court interpreting the language to give effect to the intention of the parties as expressed at the time. 'Where the language of a deed or a restriction is not clear, then in order to ascertain the intention of the parties its language should be interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when it was made.' "

Applying the foregoing principles to the case at bar, we have no difficulty in finding that the covenant in question, when construed in the context in which it was created, is sufficiently precise and definite. The improvements which were actually made and subsequently conveyed by the developer to plaintiff are all of a nature which must have been within the original contemplation of the parties entering into the covenant, and their cost, including the cost of continued maintenance, is readily ascertainable.

388

Furthermore, the covenant in the instant case is not indefinite when read in conjunction with the by-laws of the association. Article VII, subsection (A) of the by-laws provides that assessment rates shall be established each year at the general membership meeting. Subsection (F) of the same article specifies the uses to be made of the assessment monies.

## ORDER

And now, April 21, 1978, it is ordered that the preliminary objections of defendants be and the same hereby are dismissed, and said defendants are granted leave to file an answer to plaintiff's complaint in assumpsit within 20 days from the date of this order.